THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHYLLIS FALCONER, Defendant-Appellant.

Second District   No. 2—87—0044

Opinion filed April 28, 1988.—Rehearing denied May 27, 1988.

Bannister & Byrne, of Chicago (Margaret Byrne and Sue L. Augustus, of counsel), for appellant.

Robert J. Morrow and Robert F. Casey, State's Attorneys, both of Geneva (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Phyllis Falconer, was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and was sentenced to 24 years' imprisonment. She appeals contending that: (1) she was not proved guilty beyond a reasonable doubt because the evidence established self-defense; (2) the murder conviction should be reduced to voluntary manslaughter; (3) the prosecutor made improper closing argument; and (4) she was denied effective assistance of counsel. We affirm.

At trial defendant testified that her husband, the victim, had been physically abusive to her over the course of their marriage. She had married Roger Falconer in 1949, divorced him on the ground of physi-

cal and mental cruelty in 1954, and remarried him in 1965. Defendant stated that on May 26, 1986, she awoke about 10 a.m. and had coffee. Roger was scrubbing the kitchen floor. According to defendant, Roger began yelling at her because he couldn't find a wax stripper for the floor. Defendant stated that Roger came over to her and shoved her against the kitchen counter, and tried to reach for some razor blades that were on the windowsill above the kitchen sink. Defendant said she put her arm on Roger's hand and said, "I have razor blades on the windowsill for my artwork. You're not getting the razor blade." Defendant testified that Roger then slapped her, and she picked up a knife and stabbed him. Roger grabbed his arm and ran down the hall to the bathroom. Defendant testified that she followed Roger, cleaned some blood off the bathroom wall, and tried to help Roger, who told her to call for help.

A tape recording of a call to emergency number 911 at 11:47 a.m. on May 26, 1986, was introduced into evidence by the State. On the tape defendant states that she needed paramedics fast and that she had stabbed her husband. When asked by the 911 dispatcher if she would harm anyone if they came to the house, defendant replied, "No. He was doing it to me."

Defendant's testimony relating to her husband's physical abuse of her was corroborated by the testimony of her son, Michael McGuire; her mother, Gladys Goodrich; her friends, June Taylor and Olga Camdon; and her psychiatrist, Dr. Marvin DeHaan.

Police officer Donald Shaw, who was the first officer to arrive at the Falconer home after defendant phoned 911, testified that defendant told her that Roger had hit her and she stabbed him twice. Defendant also said that Roger had been down 45 minutes and that the knife she used was on the kitchen table.

Rick McKiness, a deputy sheriff, testified that defendant told him that her husband had slapped her on the face, but he saw no mark. Defendant also told the officer that she did not want medical assistance and had suffered no injuries. According to Deputy McKiness, defendant, while being escorted to the squad car, stated that the neighbors were probably wondering why she had not killed her husband sooner. He further testified that while en route to the jail defendant stated that she felt good about killing her husband and wished she had done it years ago.

Deputy sheriff Steven Fitzsimons testified that defendant said that Roger ran down the hallway after being stabbed, that she didn't think she could catch him, but when she did catch him, she stabbed him.

Dr. Larry Blum, a pathologist, testified that Roger's body had a stab wound on the right forearm and one on the right side of the back. It was Dr. Blum's opinion that the wound on the right forearm was a defensive wound and that the back wound was five inches deep, and straight into the body. Dr. Blum opined that, given Roger's wounds, he would have remained conscious for 10 to 15 minutes after the stabbing and that the cause of death was hemorrhagic shock due to loss of blood from the stab wound to the back.

The jury was instructed, *inter alia*, as to both the offenses of murder and voluntary manslaughter and as to self-defense.

Defendant first contends that she was not proved guilty beyond a reasonable doubt because the State failed to disprove her theory of self-defense. The State responds that the evidence establishes defendant's guilt of murder beyond a reasonable doubt. We agree with the State that the jury could conclude from the evidence that defendant did not act in self-defense.

■ Once a defendant has presented some evidence of self-defense, the State has the burden of proving guilt beyond a reasonable doubt as to the issue of self-defense. (*People v. Woods* (1980), 81 Ill. 2d 537, 542, 410 N.E. 2d 866.) A person is justified in using deadly force only if she reasonably believes that such force is necessary to prevent imminent death or great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 7—1), and the right of self-defense does not justify an act of retaliation or revenge. (*Woods*, 81 Ill. 2d at 543.) The issue of self-defense is a question of fact to be decided by the jury, and its decision should not be disturbed unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Ingram* (1983), 114 Ill. App. 3d 740, 743, 449 N.E.2d 564; *People v. Ellis* (1982), 107 Ill. App. 3d 603, 610, 437 N.E.2d 409.

■ Here, the jury was justified in rejecting defendant's theory of self-defense as it could rationally have concluded that defendant was not justified in using deadly force since, according to defendant's testimony, she twice stabbed Roger in response to his slapping her. There was no physical evidence to corroborate the assertion that defendant had been slapped by her husband, as she received no injuries as a result of the altercation with him, and defendant's statements to police after the stabbing suggest an intent to kill her husband. Moreover, the evidence establishes that defendant's husband died from a stab wound to his back, and the jury could have reasonably concluded that after stabbing her husband in the forearm she ran after him and stabbed him in the back. This conduct was not in self-

defense, but rather suggests retaliation or revenge.

■ Defendant next contends that her conviction should be reduced to voluntary manslaughter because the evidence establishes that she acted under an unreasonable belief that her actions were necessary to defend herself, or that she acted under sudden and intense passion resulting from serious provocation. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) Whether a homicide constitutes murder or manslaughter is a question to be determined by the trier of fact, and a reviewing court's power to reduce a murder conviction to manslaughter should be exercised cautiously. *People v. Greene* (1987), 160 Ill. App. 3d 1089, 1095-98, 513 N.E.2d 1092.

■ In this case there was ample evidence on which the jury could conclude that defendant had no basis, either reasonable or unreasonable, to fear for her safety. Defendant stabbed her husband twice, once in the back, in response to being slapped. He was unarmed, and the evidence shows that he did not seriously injure her. Although defendant points out that her husband was reaching for razor blades when she first stabbed him, the jury could have concluded that he wanted the razor blades to strip the wax off the floor.

■ Similarly, defendant's theory that she is only guilty of voluntary manslaughter because she was engaged in mutual combat with her husband is not supported by the evidence. The cases relied on by defendant, *People v. Goolsby* (1977), 45 Ill. App. 3d 441, 359 N.E.2d 871, and *People v. Hudson* (1979), 71 Ill. App. 3d 504, 390 N.E.2d 5, are distinguishable from this case as they involved extended violent struggle between the parties. Here, defendant's husband pushed defendant and slapped her once, to which she responded by killing him. These facts do not suggest the kind of mutual combat which would warrant reduction of a murder conviction to voluntary manslaughter. Even if there had been sufficient evidence to establish mutual combat, the jury could have reasonably concluded from the evidence that defendant inflicted the fatal stab wound to her husband's back after he had been wounded in the arm and was attempting to withdraw from the altercation.

■ Defendant next asserts that the prosecutor made improper closing arguments to the jury by suggesting that the past physical abuse by her husband was not relevant, and that the prosecutor misstated the law on voluntary manslaughter. As no objection was made to the remarks complained of at trial and the issue also was not raised in defendant's post-trial motion, it is waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186; *People v. Donald* (1963), 29 Ill. 2d 283, 287, 194 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296

N.E.2d 856.) We have examined the prosecutor's closing argument and find that defendant's allegations of error do not merit consideration as plain error. 107 Ill. 2d R. 615(a).

Defendant also contends that her trial counsel was ineffective for failing to adequately prepare for trial and to object to improper closing arguments made by the prosecutor. We disagree.

■ The standard to determine the effectiveness of counsel as announced in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, provides that defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness; and (2) counsel's substandard representation so prejudiced defendant's defense as to deny the defendant a fair trial. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064-65.) The *Strickland* test has been adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 526-27, 473 N.E.2d 1246, *cert. denied* (1985), 471 U.S. 1044, 85 L. Ed. 2d 335, 105 S. Ct. 2061. We find that what defendant claims to be ineffective assistance of counsel were either matters of trial tactics and strategy, or were not so egregious as to prejudice defendant's case.

■ Defendant points to the fact that a defense witness, Charlotte Mitchell, was not allowed to testify because the witness was not disclosed to the State during discovery. No offer of proof as to what the witness would testify was made at trial, and defendant's brief does not suggest the nature of her testimony. Defendant has failed to establish any prejudice resulting from the exclusion of this witness, and the decision not to further seek admission of this witness' testimony may well have been based on trial tactics. It has recently been held that exclusion is a proper sanction for failure to disclose a witness in answers to discovery. *Taylor v. Illinois* (1988), 484 U.S. ___, 98 L. Ed. 2d 798, 108 S. Ct. 646.

■ Defendant also complains that her trial counsel failed to obtain a hospital record which had been subpoenaed for trial to corroborate her testimony about one of the beatings her husband had inflicted upon her. No prejudice to defendant was shown, however, as there was considerable corroboration of defendant's testimony that her husband physically abused her. Assuming, *arguendo*, that the hospital record was admissible, it would merely have been cumulative evidence offered to establish a history of physical abuse by her husband.

■ Defendant also contends her counsel was ineffective for failing to object to the prosecutor's closing arguments, which defendant asserts were improper. Essentially, defendant argues that trial counsel should not have allowed the prosecutor to suggest that the past physi-

cal abuse by her husband was not relevant, and misstate the law on voluntary manslaughter. Although the prosecutor's remark that the past physical abuse was irrelevant might have been better left unsaid (see *People v. Estes* (1984), 127 Ill. App. 3d 642, 649, 469 N.E.2d 275), these comments alone were not sufficiently prejudicial to warrant reversal of defendant's conviction. Examination of portions of the prosecutor's argument, which defendant suggests were misstatements of the law of voluntary manslaughter, demonstrates that the comments were within the permissible realm of argument as the prosecutor was properly arguing the State's theory of the case that defendant committed murder, not manslaughter. We conclude that defense counsel was not ineffective for failing to object to the prosecutor's closing arguments which were either proper or not substantially prejudicial.

Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.