UNITED STATES of America ex rel. Phyllis FALCONER, Prisoner No. N–67392, Petitioner,

v.

Michael P. LANE, Director, Department of Corrections of the State of Illinois, and Neil F. Hartigan, Attorney General of the State of Illinois, Respondents.

No. 89 C 4198.

United States District Court, N.D. Illinois, E.D.

Aug. 14, 1989.

Louis B. Garippo, Chicago, Ill., for petitioner.

Terence Madsen, Asst. Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondents.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Less than a year ago, Phyllis Falconer asked this court to grant her a writ of habeas corpus following her conviction for murder in the Illinois courts. The State [1] immediately moved for dismissal, insisting that she had not yet exhausted her available state remedies. After this court agreed and sent Ms. Falconer packing, *United States ex rel. Falconer v. Lane*, 708 F.Supp. 202 (N.D.Ill.1989), she petitioned an Illinois circuit court for post-conviction relief. The State then argued to the state court that Ms. Falconer was barred from seeking further relief there. When the state court agreed and dismissed her petition, she returned here. The State now contends that Ms. Falconer's failure to challenge the state court's ruling in the state appellate court bars her from obtaining federal relief. This court disagrees, and further finds that Ms. Falconer is entitled to the relief she seeks. Thus, for the reasons set forth below, this court will grant Ms. Falconer's petition.

I

Roger Falconer and Ms. Falconer did not have a perfect marriage. On May 26, 1986, Ms. Falconer stabbed her husband to death with a butcher knife during an altercation in their kitchen. The State indicted her for murder.

At trial, the State's case was straightforward. The testimony of police officers, paramedics and the coroner clearly established that, on the morning of May 26, Ms. Falconer stabbed her husband twice, once in the arm and once in the middle of his back, and then rejoiced in his death. Statements Ms. Falconer had made shortly after the death also indicated that, though she inflicted the arm wound in an immediate response to her husband slapping her, she then chased after him as he headed for the bathroom, and on the way dealt him the deadly blow to his back.

The defense's case was more complicated. Based on the testimony of family and friends, the defense painted a picture of a woman suffering from cancer and various other ailments, as well as from years of physical abuse by her husband. Ms. Falconer then took the stand. She testified that on the morning of the killing, she had been doing the dishes when her husband approached and screamed at her that he could not find any wax stripper. According to Ms. Falconer, her husband then pushed her aside to get underneath the sink. Eventually, he stood up and began looking for a razor blade. She told him that they were on the windowsill, but that he could not have them.

At this point, Ms. Falconer testified, her husband slapped her hard in the face. Terrified, she swung at him. Though Ms. Falconer stated on the stand that she could not remember having had anything in her hand when she swung, she admitted that she must have been holding a butcher knife. On cross examination, Ms. Falconer further testified that she could not specifically recall when she stabbed her husband in the back, but that she did know she did not stab him after they left the kitchen. She also stated that she could not recall having told one of the police officers that she stabbed her husband in the back on the way to the bathroom.

After both sides rested, the court held a lengthy instructions conference. At first, the court questioned whether the defense had presented sufficient evidence to warrant instructions on self-defense and on the lesser-included offense of voluntary manslaughter, but after reviewing the transcript, the court decided to give such instructions. The court then accepted the defense's instructions on these issues, which came from the Illinois Pattern Instructions ("IPI"), Crim.2d Nos. 7.01–7.06.

The court instructed the jury, in pertinent part, as follows:

---

1. Technically, the respondent in this case is Michael P. Lane, the Director of the Illinois Department of Corrections. For the purposes of clarity, however, this court will refer to the State as the respondent.

A person commits the offense of murder when she kills an individual without lawful justification if, in performing the acts which cause [sic], she intends to kill or do great bodily harm to that individual; or she knows that such acts will cause the death of that individual; or she knows that such acts create a strong probability of death or great bodily harm to that individual.

To sustain a charge of murder, the State must prove the following propositions:

First: That the Defendant performed the acts which caused the death of Roger Falconer; and

Second: That when the Defendant did so, [1] she intended to kill or do great bodily harm to Roger Falconer; or [2] she knew that her act would cause death or great bodily harm to Roger Falconer; or [3] she knew that her acts created a strong probability of death or great bodily harm to Roger Falconer; and

Third: That Defendant was not justified in using the force she used.

\* \* \* \* \* \*

A person commits the offense of voluntary manslaughter when she kills an individual without lawful justification if, in performing the acts which cause the death, she intends to kill or do great bodily harm to that individual; or she knows that such acts create a strong probability of death or great bodily harm to that individual; and at the time if she acts under a sudden and instense passion resulting from serious provocation by the deceased. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

To sustain a charge of voluntary manslaughter, the State must prove the following propositions:

First: That the Defendant performed the acts which caused the death of Roger Falconer; and

Second: That when the Defendant did so, she intended to kill or do great bodily harm to Roger Falconer; or she knew that such acts would cause death or great bodily harm to Roger Falconer; or

she knew that such acts created a strong probability of death or great bodily harm to Roger Falconer; and

Third: That when the Defendant did so, she acted under a sudden and intense passion resulting from serious provocation by another.

\* \* \* \* \* \*

A person commits the offense of voluntary manslaughter when she kills an individual if, in performing the acts which cause the death,

[1] she intends to kill or do great bodily harm to that individual; or

[2] she knows that such acts will cause death to that individual; or

[3] she knows that such acts create a strong probability of death or great bodily harm to that individual;

and at the time of the killing she believes that circumstances exist which would justify the deadly force she used, but her belief that such circumstances exist is unreasonable.

To sustain the charge of voluntary manslaughter, the State must prove the following propositions:

First: That the Defendant performed the acts which caused the death of Roger Falconer; and

Second: That when the Defendant did so, [1] she intended to kill or do great bodily harm to Roger Falconer; or [2] she knew that her acts would cause death or great bodily harm to Roger Falconer; or [3] she knew that her acts created a strong probability of death or great bodily harm to Roger Falconer; and

Third: That when the Defendant did so, she believed that circumstances existed which would have justified killing Roger Falconer; and

Fourth: That the Defendant's belief that circumstances existed was unreasonable.

\* \* \* \* \* \*

A person is justified in the use of force when and to the extent she reasonably believes that such conduct is necessary

to defend herself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to herself. Trial Tr. 90–95.

The jury found Ms. Falconer guilty of murder, and the court sentenced her to a 24–year jail term.

On direct appeal, Ms. Falconer argued that "(1) she was not proved guilty beyond a reasonable doubt because the evidence established self-defense; (2) the murder conviction should be reduced to voluntary manslaughter; (3) the prosecutor made improper closing arguments; and (4) she was denied effective assistance of counsel." *People v. Falconer*, 168 Ill.App.3d 618, 119 Ill.Dec. 241, 522 N.E.2d 903 (1988). The appellate court affirmed the conviction. *Id.*

Ms. Falconer subsequently filed a petition for leave to appeal with the Illinois Supreme Court, raising the same issues she had asserted on direct appeal. Before the Court ruled on her petition, however, it issued *People v. Redick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). In that case, the Court held that the same pattern jury instructions on murder and voluntary manslaughter that had been given in petitioner's case were improper, for two reasons.

First, the Court noted that the murder instruction made no mention of the two mitigating conditions that could turn a conviction for murder into one for voluntary manslaughter—i.e., provocation and unreasonable belief of justification. *Id.* at 194, 122 Ill.Dec. 1, 526 N.E.2d 141. The Court then held that, under Illinois law, once the defendant has proffered evidence that either or both of these conditions existed, the State must disprove their existence in order to convict for murder. *Id.* at 195–97, 122 Ill.Dec. 1, 526 N.E.2d 141. Since the murder instruction stated that the prosecution needed to establish only that the killing was not justified—i.e., that it was not rea-

sonable under the circumstances—it did not adequately apprise the jury of the elements of murder. *Id.* at 197, 122 Ill.Dec. 1, 526 N.E.2d 141.

The Court also found defects in the two manslaughter instructions. The instructions, the Court noted, placed the burden on the State to prove the existence of the mitigating circumstances. These instructions were improper, the Court concluded, because "they essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it will have been proved by the defendant, not the People." *Id.* at 194–95, 122 Ill.Dec. 1, 526 N.E.2d 141.

After finding the instructions defective, the *Reddick* Court proceeded to address "the failure of both defendants to object to the instructions, to present instructions which correctly stated the law, and to raise the issues in a post-trial motion," as well as the failure of one of the defendants even to urge the defects on appeal. *Id.* at 198, 122 Ill.Dec. 1, 526 N.E.2d 141. The Court held that these omissions did not amount to a waiver of their rights to obtain reversal of their convictions because the instructions constituted "grave error." *Id.* at 199, 122 Ill.Dec. 1, 526 N.E.2d 141.

Upon learning of this ruling, Ms. Falconer filed a supplement to her petition for leave to appeal ("SPLA") with the Illinois Supreme Court. The heading of the supplement asserted that the "instructions depriv[ed] the defendant of due process," SPLA at 1. The remainder argued that the *Reddick* opinion established both that the instructions given at her trial were defective and that her failure to object to the instructions did not bar her from challenging them on appeal. The Supreme Court accepted the supplemental petition, but then denied leave to appeal without an opinion.

Ms. Falconer then brought a habeas corpus petition in this court, arguing as the sole basis for relief that the instructions violated her due process rights. The State contested this petition on the grounds,

among others, that Ms. Falconer had not yet exhausted her state court remedies. This court agreed (for reasons discussed at length below), and thus ruled that Ms. Falconer would have to pursue her claim in state court before she could seek federal habeas corpus relief.

Ms. Falconer did just that. Within two weeks of this court's ruling, Ms. Falconer petitioned an Illinois trial court for post-conviction relief, once again asserting that the jury instructions at her trial violated her constitutional right to due process. The State, in an about-face from its earlier argument to this court, moved for dismissal of the petition on the grounds that the Illinois Supreme Court's denial of leave to appeal constituted a decision on the merits barring Ms. Falconer's claim under the doctrine of res judicata. The state court agreed, and in a two-paragraph written order, "grant[ed] the state's motion to dismiss the petition on the grounds of res adjudicata." *People v. Falconer*, 86 CF 436 (May 11, 1989). Without appealing that ruling, Ms. Falconer then returned to this court for a writ of habeas corpus.

## II

Ms. Falconer seeks relief here on the grounds that the instructions given at her trial, and subsequently invalidated in *Reddick*, violated her rights to due process and a fair trial under the Fifth and Fourteenth Amendments. The State offers two general grounds for dismissal of her petition. The first asserts that Ms. Falconer forfeited her right to obtain federal relief by procedurally defaulting on her federal claim in state court. The second argues that, though defective as a matter of state law, the jury instructions did not violate Ms. Falconer's federal constitutional rights.

*Procedural Default*

The modern federal procedural default doctrine, first adopted in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), essentially holds that, except under limited circumstances, a habeas petitioner's violation of state procedural rules will prevent her from obtaining federal habeas relief. Since *Wainwright*, the

body of law explicating this doctrine has become so complete that in most cases courts have no need to explore its statutory and theoretical underpinnings; they merely apply the revealed rules to the facts of their cases. For reasons set forth below, this case presents an exception. Thus, before turning to the fact of this case, this court must elaborate at some length on the doctrine.

The discussion begins with the exhaustion-of-state-remedies requirement. First announced in *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), this requirement provides that a person in state custody must exhaust his available state court remedies before seeking federal habeas relief. Though now codified in the federal habeas statute, *see* 28 U.S.C. §§ 2254(b), (c), the exhaustion requirement is not jurisdictional, but is instead a prudential limitation "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). For this reason, the Supreme Court has held that in some circumstances federal courts may hear unexhausted claims, *see Strickland v. Washington*, 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984), and that the State may waive the exhaustion requirement, *see Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 1674, 95 L.Ed.2d 119 (1987).

In the absence of a state waiver, the habeas statute provides that "a [petitioner] shall not be deemed to have exhausted the remedies available in the courts of the State if he has the right under the law of the State to raise, by any available procedure, the question presented." Section 2254(c). "Read narrowly, this language appears to preclude a finding of exhaustion if there exists any possibility of further state court review." *Castille v. Peoples*, —— U.S. ——, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). This reading, however, would conflict with § 2254(b)'s provision that a petitioner need not pursue state court remedies where available State corrective pro-

cesses ... [are] "ineffective to protect the [petitioner's] rights," since it would "mandate recourse to state collateral review whose results have effectively been predetermined," and indeed would permanently "bar from federal habeas prisoners in States whose post-conviction procedures are technically inexhaustible." *Castille*, 109 S.Ct. at 1059. To avoid this result, the Supreme Court has held that a petitioner has satisfied the exhaustion requirement once it is clear that he no longer can obtain relief from the state courts. Such exhaustion may occur in one of three ways.

First, a petitioner exhausts state court remedies by obtaining an express resolution of his federal claim in a single round of litigation through the state courts. Once the state courts have rejected a claim, the federal habeas court will presume that they will not reach a different result in further collateral proceedings. *See Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); *see also Sandstrom v. Butterworth*, 738 F.2d 1200 (11th Cir.1984) (rule applies even if petitioner did not assert the federal claim, so long as state court addressed it).

Second, a petitioner satisfies the exhaustion requirement by "fairly present[ing]" his federal claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Even if the state courts, for whatever reason, have ignored the federal claim, the federal court will infer that this silence amounts to an implied rejection, and will thereafter accept the claim for habeas review. *See Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (per curiam).

The fair presentation route to habeas relief has two caveats. The petitioner must have given the state courts a fair opportunity to address the merits of his federal claim by notifying them that he was presenting a federal, as opposed to merely a state, claim for relief. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1983) (per curiam). Second, asserting a claim for the first time in a discretionary appeal to the state's highest court ordinarily will not suffice, since the state court's refusal to resolve the claim in this circumstance generally does not give rise to an inference that the state court rejected the claim on its merits. *Castille v. Peoples*, 109 S.Ct. at 1060.

The third way that a petitioner may exhaust his state court remedies is by procedurally defaulting on his claim in state court. Because the exhaustion requirement "refers only to remedies still available at the time of the federal petition," *Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783 (1982), a petitioner who has defaulted on a claim—either by failing to object at trial, or by failing properly to raise the claim on direct review—such that the state courts no longer will hear it, has exhausted his state court remedies for the purposes of § 2254(b).

Though any of the three paths to exhaustion will get a petitioner through the exhaustion gate, the first two provide the easier ride to habeas relief. Since res judicata does not apply to state court judgments in federal habeas proceedings, *Brown v. Allen*, 344 U.S. at 458, 73 S.Ct. at 407, a petitioner who obtains either an express or an implied rejection of his federal claim may go into federal court and obtain a new adjudication on the merits. A petitioner who satisfies the exhaustion requirement by procedurally defaulting in state court, however, will find that he has an additional hurdle to climb: the federal procedural default doctrine.

This doctrine has its genesis in the related context of the Supreme Court's appellate jurisdiction. Because the Supreme Court may correct only errors of federal law, it has no jurisdiction over final state court judgments resting on adequate and independent state grounds. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965). For even if the state court erred in its interpretation or application of federal law, the existence of the adequate and independent state ground supporting the judgment will make the Supreme Court's correction of the federal error unnecessary

and ineffective: "The federal question [is] moot; nothing turn[s] on its resolution." *Fay v. Noia,* 372 U.S. 391, 429, 83 S.Ct. 822, 843, 9 L.Ed.2d 837 (1963).

In *Brown v. Allen, supra,* the Supreme Court held that the same principle should apply in federal habeas cases. Under 28 U.S.C. §§ 2241 and 2254, habeas corpus is available only when a person is in custody in violation of federal law. When a state defendant has defaulted on a state procedural rule, and this default would serve as an adequate and independent ground for upholding his conviction notwithstanding the existence of a federal constitutional error, the Supreme Court will not take the case on direct review because the conviction does not rest on the violation of federal law alone. Similarly, *Brown v. Allen* reasoned, a federal habeas court may not ignore the state procedural default. 344 U.S. at 486–87, 73 S.Ct. at 422–23.

*Fay v. Noia, supra,* overruled this holding. The Court agreed that a state procedural default generally prevents the Supreme Court from assuming appellate jurisdiction. 372 U.S. at 429, 83 S.Ct. at 843. It disagreed, however, that the same result obtains in the habeas context. The Court's appellate jurisdiction, *Fay* explained, is limited to reviewing judgments or decrees of state courts, so an independent and adequate state ground supporting such a judgment or decree necessarily precludes Supreme Court review. *Id.* at 429–30, 83 S.Ct. at 843–44. The federal court's habeas jurisdiction, by contrast, involves not the review of a state court ruling, but rather a review "of detention *simpliciter.*" *Id.* at 430, 83 S.Ct. at 844. The existence of a state procedural default cannot deprive the habeas court of jurisdiction, the Court held, because the jurisdiction extends not to the state court's judgment, but to the "body of the petitioner." *Id.* at 431, 83 S.Ct. at 844. The Court then added, however, that whereas a state procedural default does not deprive the federal court of habeas jurisdiction, the court has the discretion to deny habeas relief if a petitioner "has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Id.* at 438, 83 S.Ct. at 848.

*Fay*'s jurisdictional holding remains good law, but its deliberate by-pass rule does not. In *Wainwright v. Sykes, supra,* the Supreme Court held that although federal courts have jurisdiction over habeas petitions notwithstanding state procedural defaults, the states' interests in the integrity of their procedural rules and the finality of their judgments render *Fay*'s deliberate by-pass standard too lenient. 433 U.S. at 87–88, 97 S.Ct. at 2506–07. Instead, *Wainwright* held, federal courts ordinarily should decline federal habeas relief when a petitioner has exhausted his state remedies through a procedural default and when this default stands as an adequate and independent ground for the conviction. *Id.* at 87, 97 S.Ct. at 2506.

Without elaboration, *Wainwright* set forth one exception to this rule: If the petitioner can establish good cause for his default, and prejudice resulting from it, the federal court may excuse the default and reach the merits. 433 U.S. at 87, 97 S.Ct. at 2506. The Court has since held that such cause and prejudice exists where the procedural default resulted either from inadequate legal assistance, *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), or an unforeseeable change in the law, *Ross v. Reed,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). The Court also has stated that, even in the absence of cause justifying the state procedural default, federal habeas remains available where "a constitutional violation has probably resulted in the conviction of one who is innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649. The Supreme Court has indicated, however, that before a federal court may grant relief on the basis of one of the exceptions to the *Wainwright* rule, the court must first determine whether the state courts would themselves overlook the procedural default and address the merits of the petitioner's claim. For if they would, then the petitioner has not exhausted his state court remedies, and must do so before asking the federal court for relief. *See Murray,* 477 U.S. at 488–489, 106 S.Ct. at 2645–46;

*Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989).

■ To summarize, a convicted state defendant may seek federal habeas relief only after he exhausts his available state court remedies. If he does so by obtaining a ruling on the merits of his federal claim, or by fairly presenting his claim through the state court processes, then he is entitled to have a federal court rule on his claim. If, on the other hand, he exhausts his state court remedies by defaulting on his federal claim, then he may obtain federal relief only if he can establish one of the following: (1) that the state court's finding of procedural default was not an adequate and independent ground for its decision; (2) that he had cause for the default and was prejudiced by it; or (3) that the failure to grant him relief would result in a fundamental miscarriage of justice. This discussion sets the stage for the resolution of Ms. Falconer's petition.

As noted earlier, Ms. Falconer brought her first petition after the Illinois Supreme Court declined to hear her challenge to the jury instructions. In its answer, the State asserted that Ms. Falconer had not exhausted her state court remedies. Because *Reddick* had held that the defects in the jury instructions amounted to grave error, the State argued, Ms. Falconer could obtain relief through the Illinois collateral proceedings. Moreover, the State continued, even if Ms. Falconer had exhausted her state court remedies, the procedural default doctrine prevented her from obtaining habeas relief because she had not framed her instructions challenge as a federal claim to the Illinois Supreme Court. Ms. Falconer, in turn, replied that she had satisfied the exhaustion requirement by asserting the instructions challenge in her supplemental petition for leave to appeal, and further that she had fairly apprised that Court of her federal claim by asserting that the *Reddick* defects violated her right to due process.

Shortly after briefing ended on Ms. Falconer's original petition, the United States Supreme Court issued *Castille.* As noted earlier, *Castille* held that a habeas petitioner who had raised federal claims for the first time in a discretionary appeal to Pennsylvania's highest court had not satisfied the exhaustion requirement because the state court's denial of the petition without opinion did not amount to an implicit rejection of the claims. 109 S.Ct. at 1060. The Supreme Court concluded by noting that "the requisite exhaustion may nonetheless exist ... if it is clear that [the petitioner's] claims are now barred under Pennsylvania law," *id.,* but left that determination for the Court of Appeals on remand.

*Castille* obviously was relevant to Ms. Falconer's petitioner, but it was not dispositive for two reasons. First, the Supreme Court's express qualification that exhaustion would exist if the petitioner's claims were procedurally barred under state law required this court to determine whether Ms. Falconer's claim was procedurally barred under Illinois law. This court had little trouble concluding that it was not. *Reddick* specifically had held that the instructions given at Ms. Falconer's trial constituted unwaivable grave error. This holding made it clear that Ms. Falconer's failure to raise her claim until her petition for leave to appeal did not give rise to a procedural default. *See also People v. Brooks,* 175 Ill.App.3d 136, 124 Ill.Dec. 751, 529 N.E.2d 732 (1988).

The second reason that *Castille* did not definitively resolve Ms. Falconer's petition lay in what *Castille* had implied. The Supreme Court had predicated its holding on the fact that the Pennsylvania court's denial of discretionary review could not properly be viewed as an implicit rejection of the petitioner's claims. In so doing, the Court suggested that where a state court's denial of discretionary review does amount to a rejection on the merits, such a denial will satisfy the fair presentation prong of the exhaustion requirement. *See* 109 S.Ct. at 1060. This suggestion presented a problem in Ms. Falconer's case.

Under Illinois law, both res judicata and procedural default apply in post-conviction proceedings: "[W]here an appeal was taken from a conviction, the judgment of the reviewing court is *res judicata* as to all

issues actually raised, and those that could have been presented but were not are deemed waived." *People v. Gaines,* 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984) (citation omitted). Because the Illinois courts almost invariably apply this rule to bar post-conviction relief, the Seventh Circuit long has held that a petitioner need not pursue Illinois post-conviction relief unless there is direct precedent that the state post-conviction court would reach the issues. *Gray v. Greer,* 707 F.2d 965, 968 (7th Cir.1983).

*Reddick,* of course, provided direct precedent that state post-conviction courts would not reject Ms. Falconer's instructions challenge on the grounds of waiver. It was not entirely clear, however, how they would view the Illinois Supreme Court's rejection of Ms. Falconer's petition for leave to appeal: No Illinois case directly had held that the refusal to grant leave to appeal is not res judicata in collateral proceedings.

In the end, two factors, one stated and one unstated, motivated this court to find non-exhaustion notwithstanding the Seventh Circuit's admonitions to the contrary. First, Illinois cases and rules strongly suggested that the denial of leave to appeal did not amount to a ruling on the merits. *See Falconer I,* 708 F.Supp. at 205. Second, and perhaps equally important, the State had assured this court that res judicata would not bar Ms. Falconer's claim in state court. *See* State's Answer Brief in 88 C 10308 at 5–7. Accordingly, the court dismissed the petition for failure to exhaust state remedies.

Back in state post-conviction court, Ms. Falconer alleged that the jury instructions violated her constitutional right to due process, and also pointed to this court's ruling that res judicata did not preclude her claim. In response, the State argued that the Illinois Supreme Court's refusal to grant Ms. Falconer's petition for leave to appeal "was a direct review of the *Reddick* issue and a final disposition of said issue," thus barring Ms. Falconer's post-conviction petition

under res judicata principles. When the state court agreed and dismissed her petition, Ms. Falconer, flabbergasted at the State's duplicity, aborted her state court proceedings and returned to this court.

■ In light of Ms. Falconer's failure to appeal the state post-conviction court's ruling, the State now agrees that Ms. Falconer has exhausted her state court remedies. The State insists, however, that because this exhaustion arises out of Ms. Falconer's procedural default of her right to appeal, and because she cannot establish cause and prejudice for abandoning the state court processes, the federal procedural default doctrine prevents her from obtaining federal habeas relief.[2] Ms. Falconer, in turn, contends that the State's assertion of res judicata in the state post-conviction court represents a waiver of its position that she had not exhausted her state court remedies in her earlier Supplemental Petition for Leave to Appeal. Since a petitioner who exhausts her state remedies on direct appeal need not seek state post-conviction relief, Ms. Falconer asserts that she had no obligation to bring her post-conviction petition at all, and thus had no need to appeal the dismissal of her petition before returning to federal court. The question presented, then, is whether the State's assertion of res judicata in the state collateral proceedings amounted to a waiver of the exhaustion requirement. This court answers the question in the affirmative.

Rule 5 of the Rules governing § 2254 habeas petitions requires the State to set forth in its answer to the habeas petition whether all state remedies have been exhausted. In *Granberry,* the Supreme Court held that because the exhaustion requirement is not jurisdictional, the State's failure to plead non-exhaustion in the district court may amount to an implicit waiver of the requirement. *A fortiori,* when the State affirmatively asserts that state remedies have been exhausted, this assertion amounts to an express waiver of the exhaustion defense. *See Henderson v. Thieret,* 859 F.2d 492 (7th Cir.1988).

2. Indeed, adding insult to injury, the State now maintains that Ms. Falconer could have obtained state court relief if only she had pursued her state court appeal.

In this case, of course, the State did not waive exhaustion in its answer to Ms. Falconer's initial petition. On the contrary, it insisted that Ms. Falconer had not exhausted state remedies, and that this court should send her back to state court to do so. When she got there, however, the State changed its position, apparently believing that, once out of federal court, it was free to defend against Ms. Falconer's petition on any ground it wished. It was not.

To be sure, neither position taken by the State was frivolous. Though this court determined in *Falconer I* that res judicata would not prevent Ms. Falconer from pursuing her claim in state court, this court also noted that no Illinois case was on all fours with this one, and that it thus was unclear whether res judicata would apply. The State, then, had at least a colorable basis for asserting res judicata as a bar to Ms. Falconer's claim.

Yet, the merit of the State's arguments is not the critical issue here. Of paramount importance is Ms. Falconer's interest in "obtaining speedy federal relief on [her] claim[ ]," *Rose*, 455 U.S. at 520, 102 S.Ct. at 1204, an interest reflected in the Seventh Circuit's rule regarding the need for direct precedent before sending a petitioner back to state court. The State's about-face had but a single purpose, and a single effect: to impair that interest. The State must have known it could not prevent Ms. Falconer from eventually obtaining a federal court ruling on her claim, but it calculated that it could delay her efforts months, or even years, by forcing Ms. Falconer to battle her way through the state court system. To permit the State gratuitously to stall Ms. Falconer's petition would frustrate the policies underlying the federal habeas corpus statute. *Cf. Marino v. Ragen*, 332 U.S. 561, 564, 68 S.Ct. 240, 242, 92 L.Ed. 170 (1947).

Two other factors make the State's conduct unacceptable. For one, by raising res judicata in the state court, the State forced Ms. Falconer to take a position directly contrary to her arguments here. Ms. Falconer's state post-conviction petition— which noted this court's ruling on the res judicata issue without actively supporting it—reflected her discomfiture at having to seek state court relief after arguing to this court that such relief was not available. This was an inevitable consequence of her having lost on the exhaustion argument here. It was neither inevitable nor appropriate, however, for the State to force Ms. Falconer to advocate the non-applicability of the res judicata doctrine, first to the lower court and then on appeal. Once the State took the position that Ms. Falconer had adopted in this court, no rule of law or equity compelled Ms. Falconer to take issue with it.

Furthermore, the State's argument in the state post-conviction court violates this court's implicit reliance on the State's assurances that post-conviction avenues remained open in the state courts. Federal courts place great stock in the representations of state's attorneys regarding the availability of state court procedures, *see* 3 LaFave & Israel, *Criminal Procedure* § 27.7 at 381–82 (1984), as did this court when it ruled on Ms. Falconer's original habeas petition. Had the State made the arguments to this court that it subsequently made to the state court, this court would have followed the Seventh Circuit's approach to Illinois post-conviction proceedings, and found Ms. Falconer's claims exhausted. Though the State may find it amusing that it convinced this court that Ms. Falconer's claims were not barred, and then persuaded the state court that they were, this court does not.

This is not to say, of course, that the State had an obligation to concede defeat in the state post-conviction court. Although at least one such court has overturned a conviction on the basis of *Reddick, see People v. Flowers*, —— Ill.App.3d ——, —— Ill.Dec. ——, —— N.E.2d —— (1st Dist. 1988), others have determined that *Reddick* is a non-constitutional ruling and therefore does not entitle a defendant to relief in post-conviction proceedings. *See, e.g., People v. Bolden*, 181 Ill.App.3d 481, 130 Ill. Dec. 97, 536 N.E.2d 1308 (4th Dist.1989). The State certainly could have raised this

issue in response to Ms. Falconer's post-conviction petition.

The State, however, should not have relied on the Illinois Supreme Court's ruling as barring Ms. Falconer from obtaining a resolution of her instructions challenge. Having done so, the State has admitted that the Illinois Supreme Court's rejection of Ms. Falconer's petition for leave to appeal constituted a rejection of her claims on the merits, and thereby has waived its position that Ms. Falconer did not exhaust State court remedies in her direct appeal. This ruling, in turn, means that Ms. Falconer had no obligation to seek state post-conviction relief, and accordingly that her failure to appeal the post-conviction court's dismissal does not give rise to a procedural default here.

Perhaps anticipating that the court would rule this way, the State raises an additional argument for denying Ms. Falconer's petition on procedural default grounds. As noted earlier, a state court's silence regarding the basis for its ruling gives rise to an inference that it reached and rejected a particular claim only so long as the petitioner fairly presented that claim to the state court. According to the State, because Ms. Falconer's Supplemental Petition for Leave to Appeal made only a passing reference to a federal constitutional right—i.e., her argument heading stating that the "instructions deprive[ed] the defendant of due process," SPLA at 1—the Illinois Supreme Court's rejection of her petition, even if viewed as a ruling on the merits, does not permit an inference that it reached her federal claim. Since (as Ms. Falconer insists) that ruling precludes Ms. Falconer from obtaining further state relief, the State reasons that Ms. Falconer procedurally defaulted on her federal claim.[3] This court disagrees for two reasons.

First, courts generally have held that when a State waives the exhaustion requirement, it also waives any procedural defaults resulting from that waiver. *See Branch v. Cupp,* 736 F.2d 533, 535 (9th Cir.1984). This rule makes obvious sense: A State may not waive the requirement that a petitioner pursue available state remedies, and then assert that the petitioner's failure to do so bars him from obtaining federal relief. *See* 1 Liebman, *Federal Habeas Corpus Practice and Procedure* § 16.2 at 233 n. 24 (1988). In her state post-conviction petition, Ms. Falconer requested "post-conviction relief, pursuant to the Supreme Court's decision in *Reddick,* based upon *the deprivation of her constitutional rights to due process and a fair trial* as a result of the manslaughter and murder instructions which the jury received at her trial." Post–Conviction Pet. at ¶ 13 (emphasis added). The State's position that the Illinois Supreme Court's ruling resolved this claim on the merits stands as an admission that the Illinois Supreme Court reached and rejected Ms. Falconer's constitutional claim, and thus removes any procedural bar to Ms. Falconer presenting it here.

Moreover, even assuming that the State's waiver did not go this far, its fair presentation argument contains a fatal flaw. As the State correctly notes, *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453–54 (7th Cir.1984), held that a petitioner had not fairly presented his federal due process claim to the state courts "where [his] argument to the state court [did] not: '(a) rel[y] on pertinent federal cases employing constitutional analysis, (b) rel[y] on state cases employing constitu-

---

**3.** The State also argues that Ms. Falconer's claim is procedurally barred because of her failure to object to the instructions at trial and failure to challenge the instructions in her appeal to the Illinois Appellate Court. This argument is frivolous. Under Illinois law, the absence of a contemporaneous objection to a defective jury instruction, or failure to challenge it on appeal, does not waive the issue when the instruction amounts to "grave error[ ]." *People v. Jenkins,* 69 Ill.2d 61, 66, 12 Ill.Dec. 728, 370 N.E.2d 532 (1977); *see* Ill.Rev.Stat. ch. 110A, ¶ 451. In *Reddick,* the Court specifically held that the defect in the instructions given at Ms. Falconer's trial constituted grave error, so the failure to object to them at trial or challenge them on appeal would not serve as a procedural bar to relief. 123 Ill.2d at 198–99, 12 Ill.Dec. 728, 370 N.E.2d 532. Ms. Falconer's failure to do so thus does not amount to a procedural default under state law, and cannot amount to one under federal law.

tional analysis in like fact situations, (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution, ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation.' " *Id.* at 454 (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc)). The State noticeably omits mentioning, however, that *Fairman* specifically stated that these factors were relevant only because the petitioner had "fail[ed] to use the magic words 'due process'" in his state court appeal. 731 F.2d at 454. The Court strongly implied that when a habeas petitioner makes reference to a particular constitutional right, he provides the state courts with a fair opportunity to address the constitutional error. *Id.* at 454.

Yet, even if something more than the mere invocation of a federal constitutional right is required, *see Franklin v. Rose*, 811 F.2d 322 (6th Cir.1987), that something more is present here. *Reddick*, though not grounded on federal constitutional law, specifically referred to *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), in which the Supreme Court held that the state must prove every element of a crime. *Reddick* proceeded to hold the murder instruction invalid because it did not require the state to disprove the existence of serious provocation or belief of justification. Ms. Falconer's reliance on *Reddick*, combined with her contention that *Reddick* violated her right to due process, unmistakeably alerted the Illinois Supreme Court to her federal constitutional claim. *See People v. Brooks*, 175 Ill.App.3d 136, 142, 124 Ill.Dec. 751, 529 N.E.2d 732 (1st Dist.1988) (*Reddick* ruling "is uncontest-

ably of constitutional dimension").[4] The Illinois Supreme Court's rejection of Ms. Falconer's petition thus provides an implied rejection of this claim,[5] and permits Ms. Falconer to pursue her claim here.

*Merits*

The defects in the jury instructions given at Ms. Falconer's trial derive, in part, from the statutes in effect at the time Ms. Falconer killed her husband. The murder statute, Ill.Rev.Stat.1985, ch. 38 ¶ 9–1, defined murder as the intentional killing of another without lawful justification. The manslaughter statute, Ill.Rev.Stat.1985, ch. 38 ¶ 9–2, defined manslaughter as the intentional killing of another resulting from either serious provocation or an unreasonable belief that the killing is justified. On their faces, the two statutes were identical: since killing under serious provocation and killing under the unreasonable belief that it is justified amount to killing without lawful justification, a person guilty of manslaughter was, by the literal terms of the statute, guilty of murder.

That obviously was not what the Illinois legislature had in mind. As *Reddick* pointed out, the serious provocation and unreasonable belief in justification prongs of voluntary manslaughter represented affirmative defenses—so-called "manslaughter defenses"—to a murder charge. 123 Ill.2d at 195–97, 122 Ill.Dec. 1, 526 N.E.2d 141. Under the Illinois affirmative defense statute, once the defendant presented evidence of these mitigating mental states, the State, in order to convict on a murder charge, had the burden of disproving their existence beyond a reasonable doubt. *Id.* at 195, 122 Ill.Dec. 1, 526 N.E.2d 141.

---

**4.** Although *People v. Bolden*, 181 Ill.App.3d 481, 130 Ill.Dec. 97, 536 N.E.2d 1308 (4th Dist.1989), held that *Reddick* was not of constitutional import, it at least recognized that the case implicated federal constitutional concerns.

**5.** Had the Illinois Supreme Court accepted Ms. Falconer's appeal, and then ruled that she had not adequately presented the federal issue, this court might well have concluded that Ms. Falconer waived the federal issue. A state court's decision to ignore a fairly presented federal claim obviously cannot serve to defeat the peti-

tioner's right to raise it in federal habeas, *see Smith v. Digmon*, 434 U.S. 332, 333, 98 S.Ct. 597, 598, 54 L.Ed.2d 582 (1978), but Ms. Falconer's presentation of her federal claim to the Illinois Supreme Court fell so close to the line that this court in all likelihood would have deferred to that Court's determination as to whether it sufficed. Since the Illinois Supreme Court did not address this issue, however, this court must resolve the close question in her favor. *Cf. Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

In *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court held that jury instructions which misstate, as a matter of state law, the burden of proof with respect to affirmative defenses do not necessarily violate the Due Process Clause. *Id.* at 119–21, 102 S.Ct. at 1567–68. So long as the state retains the burden of proving all elements of the crime, it may shift to the defendant the burden of proof with regard to bona fide affirmative defenses. *See Martin v. Ohio*, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (self-defense); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (extreme emotional disturbance). *Compare Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (state could not shift burden on issue of malice merely by labeling it an affirmative defense). That is not the problem here.

■ The trial court properly instructed the jury on the elements of murder. The court also properly instructed the jury on the elements of voluntary manslaughter.[6] The court did not, however, instruct the jury that if it found serious provocation or unreasonable belief in justification it could *not* convict Ms. Falconer of murder. On the contrary, it stated that a person is justified in using deadly force "only if she *reasonably* believes that such force is necessary to prevent imminent death or great bodily harm to herself." (Emphasis added.) Thus, the instructions did not merely shift the burden of proof on the affirmative defenses; rather, they deprived Ms. Falconer of her affirmative defenses entirely: If the jury found that Ms. Falconer intentionally killed her husband without a reasonable belief that her use of force was necessary, then it had to convict her of murder regardless of whether she acted under serious provocation or under an unreasonable belief that she was justified in using the force she did.

It is possible, perhaps even likely, that the jury saw through these instructions, grasped the distinction between murder and manslaughter, and convicted Ms. Falconer of murder because it found that she did not act with serious provocation or unreasonable belief of justification. This possibility does not suffice, however, to pass constitutional muster. *Cf. Bollenbach v. United States*, 326 U.S. 607, 613–14, 66 S.Ct. 402, 405–06, 90 L.Ed. 350 (1946) ("[W]e can[not] say that the lay jury will know enough to disregard the judge's bad law if in fact he misguides it."). If (as this court must assume) the jury adhered to the trial court's instructions, *see Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (plurality opinion), it may have convicted Ms. Falconer of murder without even considering whether she acted with either of the mitigating mental states. *Cf. Sandstrom v. Montana*, 442 U.S. 510, 517–18, 99 S.Ct. 2450, 2455–56, 61 L.Ed.2d 39 (1979). State law required the State to disprove serious provocation and belief of justification. Due process may not have required this much, *see Martin v. Ohio, supra,* but it did require the trial court to inform the jury that, if it found serious provocation or unreasonable belief of justification, it had to acquit Ms. Falconer of murder.[7] *See United States ex rel.*

---

6. As noted earlier, *Reddick* held that there existed some problem in the voluntary manslaughter instructions in that they appeared to place the burden of proving the mitigating mental states on the State when, in reality, those mental states, if proved at all, would have been proved by the defendant. 123 Ill.2d at 194–95, 122 Ill.Dec. 1, 526 N.E.2d 141. Yet, reviewing the instructions as a whole, the trial court adequately informed Ms. Falconer's jury that it should convict Ms. Falconer of voluntary manslaughter if it determined that she acted under serious provocation or under unreasonable belief of justification. Thus, the manslaughter instructions, on their own, did not violate due process.

7. Under both Illinois law and the Due Process Clause, the trial court need not instruct the jury on an affirmative defense if the defendant has not come forward with sufficient evidence to warrant such an instruction. *See* Ill.Rev.Stat. 1985 ch. 38, ¶ 3–2; *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 403 (7th Cir.1979). In this case, however, the trial court determined that Ms. Falconer had provided sufficient evidence of these defenses, and this court's review of the trial transcript confirms that the jury could have found that Ms. Falconer acted either under serious provocation or under the unreasonable belief that her actions were justified. Thus, the

*Reed v. Lane,* 759 F.2d 618, 623 (7th Cir. 1985). Since the trial court did not do so, it violated Ms. Falconer's due process rights.

■ Errors in jury instructions do not undermine a verdict when the errors are harmless beyond a reasonable doubt. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The errors in Ms. Falconer's instructions were harmless if this court can say beyond a reasonable doubt that they "did not play any role in the jury's verdict." *Connecticut v. Johnson,* 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (plurality opinion); *Carella v. California,* —— U.S. ——, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring). The court cannot do so.

To prove murder (under proper instructions), the State's case rested on two essential points. First, the State had to prove that Ms. Falconer inflicted the stab to her husband's back when she followed him down the hallway after he fled the kitchen.[8] Second, the State had to prove that Ms. Falconer's attack was a result neither of her belief that she was in danger, nor of her husband's serious provocations.

In determining where the fatal stab occurred, the jury had a simple choice: it could believe what Ms. Falconer told the officers when they arrived at her house—i.e., that, after stabbing her husband in the arm, she pursued him and stabbed him in the back—or it could believe what she testified at trial—i.e., that she swung at him twice in the kitchen and then put down the knife before following him down the hallway into the bathroom. Certainly, the jury had strong reasons for believing the first version. Ms. Falconer did not deny making the inculpatory statements to the officers, and her testimony on the stand was quite disjointed. Yet, she did testify unequivocally that she did not have a knife in her hand once she left the kitchen, and no

extrinsic evidence contradicted this testimony.

The jury's verdict does not indicate which version it believed. Although it could properly have convicted Ms. Falconer of murder only if it found that she stabbed him during her pursuit down the hall (*see supra,* at 644 n. 8), the improper instructions permitted it to convict Ms. Falconer of murder even if it believed that both stabs occurred in the kitchen, so long as it found the stabbings to be unjustified. Given the less-than-overwhelming evidence regarding where Ms. Falconer inflicted the fatal wound, this court cannot say beyond a reasonable doubt that the jury would have convicted Ms. Falconer of murder had the trial court given a proper murder instruction.

Moreover, even if the evidence unequivocally supported the State's position that the stabbing occurred in the hallway, a murder conviction under proper instructions would not have been inevitable. The State made no effort to contradict the defense's evidence that Mr. Falconer had physically and emotionally mistreated Ms. Falconer for years, and that he was in the process of abusing her again when she grabbed the knife and began her attack. Although the jury (understandably) did not believe that Ms. Falconer's response was reasonable, it could have found that, in pursuing her husband down the hall, she was responding to her husband's years of, and moments earlier, physical provocation. Under the instructions given, it had to convict her of murder even if it so found, but under proper instructions this finding would have permitted an acquittal on the murder charge. Thus, again, this court cannot say beyond a reasonable doubt that proper instructions would not have altered the outcome of Ms. Falconer's trial. Her murder conviction therefore cannot stand.

trial court had the obligation adequately to inform the jury of these two affirmative defenses.

**8.** Of course, the State could have attempted to prove murder by establishing that Mr. Falconer never struck Ms. Falconer at all, and that she intentionally and without provocation struck

him twice in the kitchen. The State, however, did not pursue this avenue, and instead rested its case on the theory that Ms. Falconer, after lashing out once at her husband in response to his slap, then chased after him and inflicted the fatal wound.

This ruling does not necessarily mean that Ms. Falconer may go free. The jury's verdict, though deficient in establishing Ms. Falconer's guilt of murder, does suffice to uphold Ms. Falconer's guilt of voluntary manslaughter. Indeed, the murder instruction, by instructing the jury to convict Ms. Falconer of murder if it found that she intentionally killed Mr. Falconer without lawful justification, amounted to an instruction on the crime of voluntary manslaughter. Thus, if the State wishes, it may reduce Ms. Falconer's conviction to one of voluntary manslaughter, and resentence her accordingly. Alternatively, the State may retry Ms. Falconer on the charge of murder, this time employing proper jury instructions.

### CONCLUSION

Ms. Falconer's petition for a writ of habeas corpus is granted. The State shall either reduce her conviction to one for voluntary manslaughter and sentence her accordingly, or vacate her conviction and retry her for murder within 120 days.