THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. STEPHEN REDDICK, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GREGORY LOWE, Appellee.

*Opinion filed June 20, 1988.*

STAMOS, J., took no part.

Daniel D. Yuhas, Deputy Defender, and Gary R. Peterson, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Kenneth A. Fedinets, Assistant Attorneys General, of Chicago, of counsel), for the People.

No. 65022.—Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Earl Strayhorn, Judge, presiding.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Roma Jones Stewart, Solicitor General, Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, and Thomas V. Gainer, Jr., Kenneth T. McCurry, Laura M. Lambur and James E. Fitzgerald, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

Paul P. Biebel, Jr., Public Defender, of Chicago (Linda J. Seeley, Assistant Public Defender, of counsel), for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In the circuit court of Peoria County, defendant Stephen Reddick (No. 65005) was charged with murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)) and was convicted. His conviction was affirmed in an unpublished opinion by the Appellate Court, Third District, which found that certain asserted errors in the jury instructions had been waived by failure to object at trial. (151 Ill. App. 3d 1164 (unpublished Supreme Court Rule 23 order).) Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted defendant's petition for leave to appeal.

In the circuit court of Cook County, defendant Gregory Lowe (No. 65022) was charged with murder (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1(a)(1), (a)(2)), attempted murder (Ill. Rev. Stat. 1985, ch. 38, par. 8—4), aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)), and two counts of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1). He was convicted of murder, attempted murder and aggravated battery. The Appellate Court, First District, reversed the convictions, finding that certain grave, nonwaivable errors had occurred in instructing the jury (152 Ill. App. 3d 508). Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted the People's petition for leave to appeal, and consolidated the causes for appeal.

Before analyzing the issues raised in each cause on appeal, we shall first briefly summarize the trial testimony of each cause. In cause No. 65005, trial testimony of Peoria police officers indicated that on July 15, 1985, Rick Johnson, defendant's roommate and homosexual lover, was discovered dead and lying nude on the floor of the apartment which decedent shared with defendant. Decedent's employer had requested that the police investigate his whereabouts when he failed to appear for work on that day.

Police officers testified that upon forcible entry into the apartment, they found evidence of a violent struggle. The victim's body bore numerous stab wounds. After viewing the body, police investigators proceeded to the upstairs bedroom and found defendant lying on a bed, nude except for a towel. There was blood on his upper torso, a small stab wound to his chest and multiple self-inflicted wounds on his left wrist.

A police officer testified that defendant waived his *Miranda* rights (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) and that defendant then explained how the killing had occurred. Defend-

ant told the officer (in a statement which was transcribed) that he had stabbed Johnson to death in the early morning hours of July 14, 1985, after they had been drinking heavily, smoking marijuana and quarreling. Defendant told the officer, "I started stabbing him, and I couldn't stop." Defendant also told the officer that when he realized what he had done, he wanted to die. In attempting suicide he had slit his wrists and ingested sleeping pills. He had then lain down in his bed until the police appeared.

At trial defendant testified on his own behalf, asserting that he had killed Johnson out of fear for his own life. In this regard he stated that when he and Johnson returned to their apartment in the early morning of Sunday, July 14, 1985, both were drunk. Defendant had been sick and was not inclined to have sex. They smoked marijuana. Johnson called defendant names which were racially insulting and accused defendant of "cheating on him" by having a sexual relationship with another man. Defendant denied the accusation and announced that he was leaving for the night. According to defendant, Johnson said that if defendant was leaving, he should pack up and leave permanently. Defendant said that he would discuss the matter in the morning. Then defendant reached for the telephone to arrange for a ride and a place to stay. At that point Johnson grabbed a steak knife from the bedside table, yelled "surprise" and lunged at defendant's chest. Defendant said that he thrust his body back into the bed, but nevertheless sustained a slash in the chest. Johnson then dropped the knife on the bed and ran downstairs to the kitchen. Thinking that Johnson was going to the kitchen to obtain another knife, defendant pursued him. In the kitchen, Johnson appeared to be reaching for a knife, but defendant grabbed one before Johnson could reach one. At trial defendant could not remember stabbing Johnson but did

remember holding a knife and did remember seeing Johnson's body fall to the floor.

In cause No. 65022, at the trial of Gregory Lowe, defendant testified on his own behalf. He admitted shooting both decedent, Larry Chaney, and Gilbert Chaney, who survived the shooting. Defendant claimed, however, that he acted with lawful justification in self-defense. Defendant testified that he was acquainted with Gilbert and Larry Chaney and that on January 25, 1983, several weeks before the shootings, Larry had threatened him in his own home and defendant had told Larry to leave. At that point defendant had also told Larry that he was no longer welcome in defendant's home. Defendant testified that he next saw Larry and Gilbert Chaney on February 10, 1983, the day of the shootings.

Defendant also testified regarding events immediately preceding the shootings of the Chaneys. Defendant stated that Larry and Gilbert were in his home when he awakened from a nap, and that defendant told Larry twice that he was unwelcome in the home. Defendant and Larry called each other names. Defendant was seated on a bucket, which Larry pulled out from under him, and Larry kicked defendant. Then Larry got on top of defendant. Larry was about to hit defendant with a bottle when Jim McBride, a mutual friend who was then present socializing, grabbed the bottle and pulled Larry off of defendant. Defendant then went upstairs. Then Larry went upstairs also and threatened defendant with sexual abuse and death. Larry went downstairs shortly thereafter, continuing to make threats. Defendant called the police and told them that there was an altercation at the house. According to defendant, the police declined to come to the home but told defendant to call back if any serious dispute developed.

Defendant was nervous because the police had refused to come. He put his gun in his pocket and

started downstairs to leave the house. As he was coming down the stairs, he heard Larry again threatening him, and he told Larry that he (defendant) was leaving for the night. Larry jumped up and grabbed a bottle by the neck as if he were going to throw it at defendant. Defendant, fearing for his life, shot Larry. Defendant then heard some movement behind him. He turned and saw Gilbert Chaney coming at him with a shiny object in his hand. Defendant was scared because Gilbert was attacking him, and defendant therefore shot Gilbert also. Gilbert hit the floor. Defendant put his gun into his pocket and left the house. Defendant contacted an attorney, kept in touch with that attorney and surrendered when his attorney advised him to do so.

The People presented three eyewitnesses (Ritchell Johnson, Jimmy McBride and Gilbert Chaney), whose testimony varied significantly from that of defendant Lowe. All of the People's witnesses testified that on the day of the shootings they had come to the defendant's residence unannounced. They testified that while they were in the living room visiting with defendant and his paraplegic brother, Maurice Lowe, defendant and decedent Larry Chaney began some name-calling and wrestling, and shortly thereafter engaged in a mock sexual act. The prosecution witnesses characterized these activities as playing, joking, and "fun and games." The three prosecution witnesses also denied ever having seen Larry Chaney kick, punch or threaten defendant with a bottle, although McBride did state that Larry at one point reached for a liquor bottle and that McBride took it from him. The three prosecution witnesses testified that after the wrestling (between defendant and decedent) stopped, defendant went upstairs with a bottle of liquor. McBride testified that he heard Larry say that he wanted some of the liquor which defendant had taken upstairs. McBride testified that Larry then went upstairs

and returned with a full cup of liquor. The three prosecution witnesses testified that shortly thereafter defendant returned to the living room and immediately shot Larry. One of these three witnesses heard the shot but did not see the initial shooting.

One of the witnesses, Gilbert Chaney, testified that after defendant shot Larry, Gilbert fell to the floor on his stomach. Gilbert testified that he himself was then shot. Jimmy McBride and Ritchell Johnson also testified that after Gilbert fell to the floor, defendant stood over him and shot Gilbert. Jimmy McBride and Ritchell Johnson stated that the defendant was standing one to three feet from Gilbert when defendant shot Gilbert.

The first issue, an issue common to both cases, is as follows: When a defendant charged with murder asserts that the killing (if unjustified) is at most voluntary manslaughter because either (a) he acted in the unreasonable belief that the killing was justified or (b) he acted under a sudden and intense passion caused by adequate provocation (Ill. Rev. Stat. 1985, ch. 38, par. 9—2), who bears the burden of proof on these issues and what is the extent of the burden?

The burden-of-proof instructions now in question, instructions which involve the above-stated issue, are Illinois Pattern Jury Instructions (IPI), Criminal, No. 7.02 (2d ed. 1981) (murder), IPI Criminal 2d No. 7.04 (voluntary manslaughter – provocation) and IPI Criminal 2d No. 7.06 (voluntary manslaughter – belief of justification). The murder instruction submitted in both cases (with the exception of one variation in the Lowe instruction, which variation is discussed later) states that to sustain the murder charge the People must prove beyond a reasonable doubt that the defendant performed the acts which caused the decedent's death; that when the defendant did so, he knew that his acts created a strong probability of death or great bodily harm to the

decedent; and that the defendant was not justified in using the force which he used.

The voluntary manslaughter – provocation burden-of-proof instruction in each case states that to sustain the charge of voluntary manslaughter the People must prove beyond a reasonable doubt that the defendant performed the acts which caused the decedent's death; that when the defendant did so, he knew that such acts created a strong probability of death or great bodily harm to the decedent; and that when the defendant did so, he acted under a sudden and intense passion resulting from serious provocation by another.

The voluntary manslaughter – belief of justification burden-of-proof instruction used in each case stated that to sustain the charge of voluntary manslaughter the People must prove beyond a reasonable doubt that the defendant performed the acts which caused the decedent's death; that when the defendant did so, he knew that his acts created a strong probability of death or great bodily harm to the decedent; that when the defendant did so he believed that circumstances existed which would have justified killing the decedent; and that the defendant's belief that such circumstances existed was unreasonable.

We conclude that the instructions set forth above, when read together, erroneously state the burdens of proof on the issues of whether the defendants acted under either intense passions or unreasonable beliefs that their actions were justified. The voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the People must prove the existence of one of the alternative mitigating mental conditions which the People contend did not exist. By contrast, the murder instruction makes no mention of the mitigating mental conditions. These instructions essentially assure that, if the jury follows them, the jury cannot possibly

convict a defendant of voluntary manslaughter. The reason is that even if a mitigating mental state is proved, it will have been proved by the defendant, not the People.

We recognize that provocation and unreasonable belief of justification are alternative "elements" of the crime of voluntary manslaughter, and we further recognize the long-established constitutional, common law and statutory principle that, to sustain a conviction, the People must prove beyond a reasonable doubt every element of an asserted crime. (*Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *People v. Weinstein* (1966), 35 Ill. 2d 467; Ill. Rev. Stat. 1985, ch. 38, par. 3—2.) Nevertheless, we hold that where, as here, a defendant charged with murder asserts that (if he acted unjustifiably) he acted under either an unreasonable belief of justification or intense provocation, the People need not present evidence of either of those mental conditions in order to convict him of voluntary manslaughter. The reason for this result is that these two mental states are states of lesser culpability, and defendant relies on their existence in order to lessen the culpability of his otherwise murderous conduct.

We must next determine whether the People (in order to maintain a murder conviction) must *disprove* the existence of these mental states or whether a defendant (in order to avoid the murder conviction and instead be convicted of voluntary manslaughter) must *prove* the existence of one of these mental states. We find that this issue is controlled by section 3—2 of the Criminal Code of 1961 (1961 Code), which reads as follows:

"Affirmative defense. (a) 'Affirmative defense' means that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereof.

(b) If the issue involved in an affirmative defense, other than insanity, is raised then the State must sustain

the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. If the affirmative defense of insanity is raised, the defendant bears the burden of proving by a preponderance of evidence his insanity at the time of the offense." Ill. Rev. Stat. 1985, ch. 38, par. 3—2.

In this provision the General Assembly has not articulated what issues may be deemed "affirmative defenses" in murder trials. However, we believe that the burden of proof as to the manslaughter "defenses" to a murder indictment is fairly addressed in section 3—2. We reach this conclusion because the issues of unreasonable belief and heat of passion are issues which traditionally the People's evidence in a murder trial would not raise, and which the defendant at trial would first put in issue. Thus, these defenses reasonably fall within the language of section 3—2(a).

Moreover, even if the language of section 3—2 had left uncertain its applicability to the mitigation issues involved herein, the uncertainty would be resolved by the legislative history of the provision. Section 3—2 governs the burden of proof on many affirmative defenses which were formerly addressed in section 155 of the Criminal Code of 1874 (1874 Code) (Ill. Rev. Stat. 1961, ch. 38, par. 373). Section 155 read as follows:

"The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide."

Since section 155 of the 1874 Code clearly governed the burden of proof on the "manslaughter" defenses to a murder charge, and since section 3—2 of the 1961 Code is the only provision now governing the burden of proof on defenses to murder, we believe that the General As-

sembly intended section 3—2 to govern the burden of proof as to the manslaughter defenses to murder. We find it extremely unlikely that the General Assembly, in thoroughly revising the 1874 Code, either intentionally or through oversight failed to address the burden of proof on these defenses. The far more reasonable conclusion is that the General Assembly addressed that burden of proof in section 3—2.

Thus, under the 1961 Code, if a defendant in a murder trial presents sufficient evidence to raise issues which would reduce the charge of murder to voluntary manslaughter, then to sustain the murder conviction, the People must prove beyond a reasonable doubt that those defenses are meritless, and must also prove beyond a reasonable doubt the statutory elements of murder.

The burden-of-proof instructions regarding both voluntary manslaughter and murder in both of these cases were thus incorrect in placing upon the People the burden of proving the existence of intense passion or unreasonable belief in justification. The instructions should have placed upon the People the burden of disproving the existence of either of these two states of mind.

We note that our holding regarding the burden of proof on the mitigating mental states will have only limited application. The reason is that, by Public Act 84—1450, the General Assembly has abolished the offense of voluntary manslaughter and substituted for it the offense of second-degree murder. By this same enactment the General Assembly has also specified that the defendant shall have the burden of proof regarding the mitigating mental states discussed above. Public Act 84—1450 became effective July 1, 1987, but it states that it applies to homicides occurring after December 31, 1986. The validity of this retroactive application is not here in issue, and accordingly, we express no opinion regarding it.

Our conclusion that the circuit courts erred in instructing the juries on the mitigating mental conditions does not necessarily warrant disturbing the guilty verdicts. In determining whether new trials are warranted, we must address the failure of both defendants to object to the instructions, to present instructions which correctly stated the law, and to raise the issues in a post-trial motion. Moreover, with respect to Lowe, we must address the fact that he has not even disputed the correctness of the manslaughter instructions before this court. (He has instead focused largely on a separate instructional error discussed later.)

Generally, a defendant waives any error contained in jury instructions if he does not object or proffer alternative instructions at trial and, ordinarily, issues not properly raised in a defendant's post-trial motion will not be considered on appeal. (*People v. Thurman* (1984), 104 Ill. 2d 326.) However, if the interests of justice require, substantial defects in jury instructions in criminal cases may be considered, even though the defendant has failed to make timely objections. (107 Ill. 2d R. 451(c).) This exception will be invoked to correct grave errors or to correct errors in cases so closely balanced that fundamental fairness requires that the jury be properly instructed. 104 Ill. 2d at 329-30.

The instant cases involve grave error. We have previously held that certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the People's burden of proof. (*People v. Berry* (1984), 99 Ill. 2d 499; *People v. Roberts* (1979), 75 Ill. 2d 1, 13; *People v. Jenkins* (1977), 69 Ill. 2d 61.) Our review of the record in each case reveals that the jury was not apprised

of the People's burden of proof. Consequently, grave error occurred in each case.

Moreover, the fact that the parties in the Lowe case have not addressed the errors in the manslaughter instructions does not preclude us from considering the correctness of those instructions on appeal and ordering new trials. This court has interpreted Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)) (which states that points not argued in an appellant's initial brief are waived) as an admonition to the parties, not a limitation upon the jurisdiction of a reviewing court. (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 211.) A reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address, and we shall not ignore these grave errors in these causes. Accordingly, each defendant is entitled to a new trial regarding his murder conviction.

We next turn to an additional assertion of Reddick (No. 65005), namely, that his murder conviction should be reversed because the People failed to negate his partial affirmative defense of voluntary manslaughter beyond a reasonable doubt. In his view, the evidence established that (a) he was acting under a sudden and intense passion resulting from serious provocation by the deceased and (b) he was acting under an unreasonable belief that his use of deadly force was justified. Having decided that due to instructional errors his conviction cannot stand, and that he is at least entitled to a new trial, we must now determine whether the People's case is so weak that no rational trier of fact could find his manslaughter defenses meritless beyond a reasonable doubt. *People v. Sanchez* (1986), 115 Ill. 2d 238, 261; *People v. Collins* (1985), 106 Ill. 2d 237, 277.

Citing *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, defendant argues that under the circumstances the jury was required to believe defendant's testimony that

he acted in a heat of passion. In *Brown* we stated that "a jury cannot arbitrarily or capriciously reject the testimony of an unimpeached witness. [Citations.] Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury." (88 Ill. 2d at 85.) *Brown* is not controlling here. As discussed below, defendant's testimony regarding his state of mind is suspect both because of defendant's own testimony regarding the sequence of events and because of another witness' testimony.

Based on the evidence presented, a rational jury could reasonably find beyond a reasonable doubt that defendant did not act under a sudden and intense passion. According to testimony of defendant's neighbor, Douglas Sylvia, defendant told Sylvia a few days before the killing that he thought decedent was going to ask him to move out and that, if decedent did make such a request, defendant would "use the knives." This indicates that the thought of violently assaulting decedent was not a thought which suddenly occurred to defendant on the day of the killing. Rather, the thought arguably was one which defendant had been entertaining for some time. This evidence would obviously lead a jury to question defendant's testimony that he acted in a heat of passion.

Moreover, defendant's own testimony regarding the sequence of events would render suspect his testimony regarding his state of mind. Defendant testified that he was poked with a knife but avoided serious injury by leaning back on the bed. Defendant further testified that the decedent retreated and that defendant chased him. A jury could reasonably conclude from defendant's and Sylvia's testimonies that, despite defendant's contention to the contrary, he did not act under a sudden and intense

passion. Further, a jury could reasonably find that, even if defendant acted under an intense passion, the passion did not result from adequate provocation.

We also conclude that a jury could find beyond a reasonable doubt that defendant did not believe he was acting in self-defense. His assertion of this belief is suspect, considering Sylvia's testimony that defendant intended to "use the knives" if asked to vacate the premises, and considering that after decedent poked defendant with a knife, decedent retreated. Moreover, even if defendant could convince a jury that he mistakenly believed stabbing decedent was initially necessary, a jury could still reasonably find that defendant did not believe repeated stabbings were necessary.

Considering all of the evidence, we thus conclude that a jury could find beyond a reasonable doubt that defendant neither acted in the belief that he was defending himself nor under a sudden passion resulting from adequate provocation. Therefore, although defendant is entitled to a new trial, he is not presently entitled to an acquittal.

We now turn to numerous additional errors which Lowe (No. 65022) contends occurred in his trial. The first such error is the circuit court's failure to instruct the jury on the burden of disproving that defendant acted in self-defense. None of the burden-of-proof instructions submitted to the jury (including the instructions on murder, manslaughter, attempted murder and aggravated battery) addressed this burden-of-proof issue. It is well settled that when a defendant presents sufficient evidence to raise the issue of self-defense, the jury must be instructed that the People have the burden of proving beyond a reasonable doubt that the use of deadly force was not justified. *People v. Williams* (1974), 57 Ill. 2d 239, 242, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.

The People acknowledge that the burden-of-proof instructions were erroneous in this respect. However, relying on *People v. Huckstead* (1982), 91 Ill. 2d 536, the People argue that when all of the instructions are viewed in conjunction with the closing arguments, the jury was adequately instructed and no grave error occurred.

Since we have already determined that the murder/manslaughter charges must be reversed, the question of whether grave error occurred is only pertinent to the attempted murder and aggravated battery charges. In *Huckstead* the court stated, "the instructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that defendant was not justified in the force he used." (91 Ill. 2d at 545.) In the instant case, however, the jury was not so apprised. Although the jury was instructed that the prosecution had the burden of proving every element of the crimes charged, a lack of justification was not listed as an element of any of the alleged offenses. Moreover, and unlike the situation in *Huckstead*, counsel in closing arguments did not tell the jury that the People had to prove lack of justification. Consequently, we find that grave error occurred with respect to each of the alleged offenses in the Lowe trial. Therefore, defendant Lowe is entitled to a new trial not only with respect to the murder and manslaughter charges, but also with respect to the attempted murder and aggravated battery charges.

Defendant Lowe also argues that the circuit court erred in excluding evidence of McBride's conviction for armed robbery as impeachment. The parties agree that, due to a miscalculation, the circuit court erroneously applied the rule set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, that a witness cannot be impeached by a conviction if more than 10 years have elapsed since

the date of the conviction or the date of release from confinement, whichever is later. The instant trial was held within 10 years of McBride's release from prison for the conviction, and the *Montgomery* rule set forth above does not bar admission of the evidence of the conviction. Thus, the circuit court should not have excluded the testimony solely on this basis.

Since on retrial the crime in question will fall squarely within the 10-year *Montgomery* bar, the issue arises as to whether the 10-year bar may be fairly applied. We believe that it cannot. If the evidence should have been admitted previously, then it must be admitted on retrial. McBride will likely be attempting to track his prior testimony, and fundamental fairness dictates that defendant be allowed to impeach him in the same manner that defendant should have been permitted to impeach him in the initial trial.

The People argue that, even without regard to the 10-year *Montgomery* rule, the evidence of the conviction was properly excluded as unfairly prejudicial. The circuit court (applying the 10-year rule) did not determine whether the evidence should be excluded on any other basis. We note the broad discretion vested in the circuit court in evaluating the admissibility of evidence (see *Montgomery*, 47 Ill. 2d 510), and we leave it to the circuit court on retrial to address the People's arguments in the first instance. We note only that the 10-year *Montgomery* rule cannot be used to exclude the evidence.

Having determined that Lowe must be retried as to all charges, there is no need for the court to address the additional errors asserted by Lowe.

For the foregoing reasons, each defendant in these consolidated causes is entitled to a new trial on all charges against him. Accordingly, the judgments of the appellate court and the circuit court in cause No. 65005 (Reddick) are reversed, and the cause is remanded to the

circuit court of Peoria County; the judgment of the appellate court in cause No. 65022 (Lowe), reversing the convictions and remanding the cause to the circuit court of Cook County, is affirmed.

*No. 65005 — Appellate court reversed;*
*circuit court reversed;*
*cause remanded.*
*No. 65022 — Appellate court affirmed;*
*cause remanded.*

JUSTICE STAMOS took no part in the consideration or decision of this case.