**UNITED STATES of America ex. rel. Kevin KING, Petitioner,**

v.

**Howard PETERS, Director of the Illinois Department of Corrections, Respondent.**

**No. 91 C 3712.**

United States District Court, N.D. Illinois, E.D.

June 5, 1992.

Opinion Vacated Nov. 5, 1992.*

Kelvin King, pro se.

Susan G. Feibus, Louis B. Garippo, Kane, Obbish, Propes and Garippo, Chicago, Ill., for petitioner.

Steven Joseph Zick, Margaret Mary O'Connell, Illinois Attys. Gen., Chicago, Ill., for respondent.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Kevin King is a convicted murdered who filed a pro se petition in this court for habeas corpus relief pursuant to 28 U.S.C. § 2254. Mr. King was convicted on June 17, 1985 of the murder of Arthur Warren and sentenced to thirty years in prison. Respondent has moved to dismiss on the grounds of exhaustion and procedural default. As outlined and explained below, the court requests that the parties submit additional briefing on the issue of whether Mr. King's voluntary dismissal of his Illinois Post–Conviction petition constitutes a procedural default.

*Background*

■ This review of the facts is taken verbatim from the opinion of the Illinois Appellate Court which affirmed the conviction. The trial court records have been lost. *See* Respondent's Memorandum of

---

* Editor's Note: The Court's November 5, 1992 vacating opinion will be published in a subsequent advance sheet.

Law in Support of Denial of the Writ at 3; Petitioner's Supplemental Memorandum at 2. Factual findings made by a state appellate court are accorded the same statutory presumption of correctness as that accorded state trial courts in a habeas proceeding. *See Dooley v. Duckworth*, 832 F.2d 445, 448 (7th Cir.1987).

Celeste Warren, the deceased's estranged wife, testified for the state that on May 4, 1984, at 1:45 p.m., she saw the deceased when he stopped at her apartment. He was seeking treatment for a swollen eye which he received as a result of a fight with defendant. The deceased left, and Celeste returned to work at a nearby pharmacy. One hour later, defendant entered the pharmacy, stating that, "I just kicked your husband's m—f— ass and I should have killed him." Celeste went to the deceased's apartment, where she found paramedics entering the building. The deceased appeared comatose and had blood on his face. He died later at the hospital. The deceased had been recovering from a collapsed lung.

Iaggars Banga, a paramedic, testified that he treated the deceased at his apartment. The deceased was in acute respiratory distress. His condition deteriorated rapidly, with no blood pressure and only a slow and faint pulse. After 20 minutes, he was taken to the hospital.

Dr. Robin E. Graham testified for the State that on May 4, 1984 he treated the deceased at the hospital. In an unsuccessful attempt at resuscitation, surgery was performed to allow the deceased's heart to be manipulated manually. Dr. Graham observed that the deceased's abdominal cavity was filled with blood and his spleen was ruptured.

Dr. Eupil Choi testified for the State that on May 5, 1984 he performed an autopsy on the deceased. The cause of death was a traumatic rupture of the spleen. The deceased had a blunt trauma laceration on the chin, a small laceration on the lower lip, and three hemorrhages on the head. He had 11 fractured ribs, evidence of bleeding in the stomach area, and multiple lacerations on the spleen. An enlarged liver indicated cirrhosis, a condition which can cause the spleen to become enlarged. The size of the spleen, however, was within the normal range. Dr. Choi opined that the rib and head injuries could have been caused by kicking and punching.

Officer Dorothy Sopanick testified for the State that she and her partner investigated the incident. After defendant was advised of his *Miranda* rights, he stated that he "had an argument with Warren and hit him with his hands and feet." Officer Daniel Centracchio testified that he interviewed defendant on the following day. After being given his *Miranda* rights, defendant stated, "he argued with Warren, he hit him, he punched him, and when he fell down, kicked him."

Ernest Walker, a friend of the defendant and the deceased, testified for the defendant that on May 4, he accompanied Theresa Anderson and defendant to the deceased's apartment. Two other men, William Scott and "Chico," were also present. While Anderson and defendant waited, Walker and the deceased injected cocaine. The deceased and defendant began arguing and defendant slapped Warren, knocking him down. [Walker] testified that the deceased "lunged up" at defendant with a knife. Defendant hit the deceased several times. As Walker tried to hold defendant back, defendant threw him aside, and defendant punched and kicked the deceased several more times as the deceased was on the floor in a fetal position. The deceased never kicked or punched defendant. Walker later met defendant, who stated that he was going to tell Celeste Warren what had happened.

\*   \*   \*   \*   \*   \*

Dr. Michael Schaffer, a toxicologist, testified for defendant that urine and blood tests revealed that the deceased had used cocaine prior to his death. Dr. Schaffer could not determine how soon before his death the deceased used the drug.

Gail Feiger, a law student, testified for the State in rebuttal that she was present on April 23, 1985 when Walker was interviewed by two assistant State's Attorneys. Walker did not mention that the deceased had a knife until he agreed that he had told defendant's attorney about the knife.

### Procedural History

King appealed his conviction to the Illinois Appellate Court. On appeal, King argued that he received ineffective assistance of counsel at trial in violation of the Sixth Amendment. He also argued that the state did not prove him guilty of murder beyond a reasonable doubt. The Appellate Court ruled against him, upholding the conviction. King did not make a timely appeal to the Illinois Supreme Court. In his petition for habeas corpus, King explains that the failure was because his appellate lawyer did not inform him of the Appellate Court's decision until several months after the decision was made. After the Illinois Supreme Court's decision in *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), King made a motion to the Illinois Supreme Court for leave to file a late petition for leave to appeal, but the motion was denied.

In his pro se petition, Mr. King raised three grounds for relief. First, raising an argument that he did not make in his direct appeal, he contended that his due process rights were violated because the jury that convicted him was not properly instructed regarding the then-existing Illinois law on murder and manslaughter. King argues that the instructions deprived him of a possible affirmative defense because they failed to instruct the jury that it may not convict him of murder if it found that King had acted under an unreasonable belief that he was justified in using force. Under Illinois law in force at the time, persons who kill another with an unreasonable belief that force was justified as self-defense have committed voluntary manslaughter rather than murder. *See Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990) (similar jury instructions on murder violated due process because they were confusing and could permit a jury to completely ignore whether the defendant had a mitigating mental state which would reduce the crime from murder to voluntary manslaughter); *cf. People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988) (similar jury instructions on murder offend Illinois statutory law). Second, King argued that he received ineffective assistance of counsel in violation of the Sixth Amendment. Third, he argued that the State failed to prove him guilty of murder beyond a reasonable doubt.

The court appointed counsel for King on January 9, 1992. In King's Supplemental Memorandum in Support of Petition for Writ of Habeas Corpus, King's appointed counsel represent that King has decided to pursue only his *"Reddick/Falconer* claim." *See* Supp.Mem. at 2. Although his claim was referred to as a *"Reddick/Falconer* claim," it is actually just a *Falconer* claim. While both *Reddick* and *Falconer* ruled that Illinois' pattern jury instructions on murder were erroneous, only the latter opinion was based on federal law. The Seventh Circuit has explained that *Falconer* held that Illinois pattern jury instructions on murder violated the due process clause, whereas *Reddick* was grounded exclusively on state law. *See Taylor v. Gilmore*, 954 F.2d 441 (7th Cir. 1992), *petition for cert. filed* (U.S. Apr. 27, 1992) (No. 91–1738). As federal habeas corpus relief can not be granted based on a violation of state law, *Reddick* can not be the basis for relief. *Id.* *Falconer*, however, could be the basis for relief. *Id.*

At the time he filed his habeas corpus petition, King also had pending in Illinois state court a post-conviction proceeding brought pursuant to Ill.Rev.Stat. ch. 38, ¶ 122–1 (1989). That petition raised a *Reddick* argument and also asserted that the jury instructions violated due process (without citing *Falconer*). The petition, however, has been voluntarily dismissed by the petitioner with prejudice.

### Procedural Default and Exhaustion

Before he dismissed with prejudice his post-conviction proceeding in Illinois state

court, the state argued that King had failed to exhaust his state court remedies with respect to his jury instruction argument because the identical claim was pending in state court. At the same time, the state argued that King had procedurally defaulted on the jury instruction argument by failing to have raised it on direct appeal.

Because the post-conviction proceeding was voluntarily dismissed with prejudice, King can not raise that argument again in Illinois post-conviction proceedings. *See* Ill.Rev.Stat. ch. 38, ¶ 122–3; *People v. Free*, 122 Ill.2d 367, 119 Ill.Dec. 325, 522 N.E.2d 1184 (1988). Therefore, King presently has no unexhausted state remedies available to him. *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982); *Williams v. Duckworth*, 724 F.2d 1439, 1441 (7th Cir. 1983).

The state, however, also has argued that King's failure to raise the jury instruction argument on direct appeal and the voluntary dismissal of the post-conviction petition amount to a procedural default of the argument. *See* Supp.Mem. in Support of Denial of the Writ at 1. The state argues that default occurred in at least one of three ways: (1) King's failure to have raised his jury instruction argument on direct appeal to the Illinois Appellate Court, (2) his failure to have made any sort of timely direct appeal to the Illinois Supreme Court, and (3) his voluntarily dismissing his Post–Conviction petition in state court.

In arguing that there has not been a procedural default, King relies upon *Taylor v. Gilmore*, 954 F.2d 441 (7th Cir.1992). This case, however, is no answer to the charge that King has defaulted. In *Taylor*, the Seventh Circuit ruled that *Falconer* did not establish a new rule and that pursuant to *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the ruling announced in *Falconer* may be applied in habeas proceedings to pre-*Falconer* convictions. Even though *Falconer* will apply retroactively to pre-*Falconer* convictions, the habeas petitioner, however, must still not have waived his *Falconer* arguments. Only a petitioner who has not de-

faulted on his *Falconer* arguments may receive the benefit of the retroactive application of the *Falconer* ruling. In fact, in *Taylor* the Seventh Circuit observed that despite its ruling on *Falconer's* retroactively, *Falconer* only applies retroactively if it has not previously been waived. *Taylor*, at n. 5.

■ Although King has not presented a winning argument to the state's contention that he waived his *Falconer* argument, this court is persuaded, after a careful reading of the governing case law, that King has not waived his argument based on his failure to raise the argument on direct appeal.

Ordinarily, there is no question that King's failure to have raised his jury instruction argument on direct appeal would have led to a procedural default of the argument. The Seventh Circuit has plainly stated that "[i]f a state prisoner fails to raise a claim in his state court appeal, he may base a habeas corpus action on that claim only by showing cause and prejudice." *See United States ex. rel. Holleman v. Duckworth*, 770 F.2d 690, 691 (7th Cir.1990); *see also Teague v. Lane*, 489 U.S. 288, 298–99, 109 S.Ct. 1060, 1068–69, 103 L.Ed.2d 334 (1989) (equal protection argument not raised on direct appeal in state court was procedurally defaulted). In fact, however, federal courts must look to state law to ascertain whether or not an argument has been procedurally defaulted. *See Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984); *Buelow v. Dickey*, 847 F.2d 420 (7th Cir.1988). The Seventh Circuit could confidently state that failure to raise a claim on direct appeal constitutes default absent cause and prejudice because of the basic and universal rule that "where an appeal [is] taken from a conviction, the judgment of the reviewing court is *res judicata* as to all issues actually raised, and those that could have been presented but were not are deemed waived." *People v. Gaines*, 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984), *cert. denied*, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985); *see also Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); 107 Ill.2d R.

341(e)(7) (Illinois Supreme Court rule that points not argued in an appellant's initial brief are waived).

On the other hand, what about the rare case in which the state courts themselves have held that a criminal defendant's failure to raise a particular argument on direct appeal does not constitute waiver? Just as a federal court must respect a state court's finding of waiver or procedural default under its own laws, so too a federal court must find that there has not been a procedural default if the state courts would not have found default.

With respect to *Reddick* claims, the Illinois Supreme Court has ruled that the fact that a criminal defendant failed on direct appeal to address the errors in the pattern instructions on murder did not preclude the Supreme Court from considering the correctness of those instructions. *See People v. Reddick*, 123 Ill.2d 184, 199, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). The case of *People v. Lowe* was consolidated with *People v. Reddick* on appeal. Defendant Lowe failed to raise the same arguments as Defendant Reddick. Nonetheless, the Illinois Supreme Court overlooked Lowe's omission and applied its ruling in the appeal to both Reddick and Lowe. The Illinois Supreme Court reasoned that "[a] reviewing court need not ignore grave errors of law which the parties on appeal either overlook or decline to address" and concluded that with respect to Defendant Lowe that it would not ignore the "grave errors" that tainted his trial. Subsequently in *People v. Flowers*, the Illinois Supreme Court, on appeal of a Post–Conviction relief proceeding, ruled that the petitioner, like Lowe, did not waive his *Reddick* argument even though it was apparently not raised at trial, in a post-trial motion or in the direct appeal. *People v. Flowers*, 138 Ill.2d 218, 234–35, 149 Ill.Dec. 304, 561 N.E.2d 674 (1990).

Although the Seventh Circuit in *Taylor* distinguished *Reddick* claims from *Falconer* claims, the Seventh Circuit has also ruled that Illinois' rules on procedural default are the same for either sort of claim. *See Rose v. Lane*, 910 F.2d 400 (7th Cir. 1990) (relying on *Reddick* to conclude that a *Falconer* claim had not been waived due to habeas petitioner's failure to have made a contemporaneous objection to the instructions); *see also Falconer* (relying on *Reddick* to hold that Falconer had not waived her claim due to her failure to have made a contemporaneous objection to the instructions).

Thus, under the Illinois Supreme Court's decisions in *Reddick* and *Flowers*, King's failure to have raised his *Falconer* argument to the Illinois intermediate appellate court did not constitute procedural default because it is a waiver that the Illinois Supreme Court excepts. Every state manufactures exceptions to its rules of procedural default to deal with cases in which application of the ordinary rules of waiver would produce unacceptably harsh consequences. *See Prihoda v. McCaughtry*, 910 F.2d 1379, 1383–84 (7th Cir.1990). A federal court is not in a position to guess when the state judiciary will manufacture an exception, but in this instance no guesswork is required.

■ Based on *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990), the court finds that the Illinois Supreme Court has created a special exception excusing a criminal defendant's failure to have raised a *Reddick* or *Falconer* argument on direct appeal. In *Falconer*, the Seventh Circuit stated that "the Illinois Supreme Court has spoken clearly" that failure to have made a contemporaneous objection at trial to the jury instructions does not waive a *Reddick* or *Falconer* claim. *Falconer*, 905 F.2d, at 1133. The only authority cited in *Falconer* was *Reddick* itself. It reasoned that since the criminal defendant's failure to make a contemporaneous objection in *Reddick* was pardoned, then so too must Ms. Falconer's identical failure. As mentioned, defendants in both *Reddick* and *Flowers* were found not to have procedurally defaulted on their *Reddick* claims even though they failed to raise the argument on direct appeal. Therefore, extending *Falconer*, Mr. King must also be found not to have waived his argument due to his failure to have raised it on direct appeal.

Having determined that King's failure to raise his *Falconer* claim to the Illinois Appellate Court, this court next turns to the question of whether his failure to have filed a timely appeal of any sort to the Illinois Supreme Court waived the *Falconer* argument. Mr. King's omission was arguably graver than the defendants' omissions in *Flowers* and *Reddick*. Although the defendants in *Flowers* and *Reddick* failed to raise their *Reddick* and *Falconer* arguments, they at least did file appeals with the Illinois Supreme Court. Doing so gave the Illinois Supreme Court the opportunity to apply the "grave error" exception. By not making a timely appeal to the Illinois Supreme Court, King passed up the possibility that upon reviewing the record the Court might come upon a grave error that must be corrected as it did with Defendant Lowe in *Reddick*.

King's failure to have appealed to the Supreme Court must not be considered procedural default, however, because such a ruling would create an unfair anomaly. Consider the habeas petitioner who failed to appeal his murder conviction and who concedes that in all respects he received a perfect trial except insofar as his due process rights under *Falconer* are concerned.· That person had nothing to appeal except a *Reddick* or *Falconer* argument. As discussed above if he had appealed other issues, his *Falconer* claims would not have been waived. If he lacked other issues to appeal and therefore did not appeal, he should likewise not be considered to have waived his *Falconer* argument. One defendant should not be ruled not to have defaulted on his *Falconer* argument while a second should be found to have defaulted merely because the former had other, unrelated appealable issues while the latter did not.

Next, the court must determine whether by voluntarily dismissing his Post–Conviction petition in state court, King has waived his *Falconer* argument. *See Farrel v. Lane*, 939 F.2d 409 (7th Cir.1991) (habeas petitioner waived certain arguments by not appealing the Illinois trial court's decision denying his Post–Conviction petition). King argues that because of the Illinois Supreme Court's decision in *Flowers*, he has not procedurally defaulted by dismissing with prejudice his Illinois Post–Conviction petition. In *Flowers*, the Illinois Supreme Court adopted the United States Supreme Court's decision in *Teague v. Lane* regarding the retroactive application of judicial decisions on collateral attacks on convictions. The *Flowers* court then held that *Reddick* announced a new rule and hence would not be applied in post-conviction proceedings. King argues that since the Illinois courts would not have granted him post-conviction relief based on *Falconer*, he did not procedurally default by voluntarily dismissing his post-conviction petition.[1]

King has cited no case law to support his argument that a habeas petitioner has not procedurally defaulted if he failed to bring a state post-conviction proceeding that would have been clearly futile. He has, however, cited one Seventh Circuit case which stated that if it is clear that further post-conviction review would be futile, state remedies are exhausted notwithstanding the fact that the petitioner did not appeal a lower court's adverse post-conviction ruling. *See Mattes v. Gagnon*, 700 F.2d 1096, 1098 n. 1 (7th Cir.1983); *see also Williams v. Duckworth*, 724 F.2d, at 1443 n. 5; *United States ex. rel. Williams v. Morris*, 483 F.Supp. 775 (N.D.Ill.1980) (habeas petitioner had exhausted his state remedies even though he failed to bring an Illinois Post–Conviction proceedings because it was clear that Illinois courts would rule against him).

It is a fair inference that if failure to have pressed a futile post-conviction proceeding does not doom a federal habeas

---

1. King's argument implies that since the Illinois courts would not apply *Reddick* retroactively on a collateral proceeding, it will also not apply *Falconer* retroactively. As far as this court can determine, King's inference is correct. *See Flowers v. Illinois Department of Corrections*, 962 F.2d 703, 707 (Easterbrook, J., concurring) (Illinois Supreme Court's opinion in *Flowers*, holding that *Reddick* does not apply retroactively, "conflict[s]" with Seventh Circuit's *Taylor* opinion which held that *Falconer* does apply retroactively).

petition on the grounds of exhaustion, then voluntarily dismissing a futile post-conviction proceeding does not doom a federal habeas petition on the grounds of waiver. At this stage, however, the court is unprepared to rule that that inference is in fact the law.

As a formal matter, it appears that King has waived his argument by voluntarily dismissing with prejudice his Post–Conviction proceeding. *See* Ill.Rev.Stat. ch. 38, ¶ 122–1 (1989). If so, King would have to show cause and prejudice sufficient to excuse the default. *See Zellers v. Duckworth,* 763 F.2d 250, 252–53 (7th Cir.1985) (habeas petitioner must show "cause and prejudice" for failure to appeal an adverse ruling of a trial court in a state post-conviction proceeding). As mentioned, King contends that his voluntary dismissal of the Post–Conviction proceeding was excused on the grounds of futility.

The Supreme Court, however, in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), ruled that futility does not constitute "cause" for a failure to make a contemporaneous objection to an erroneous jury instruction, as required by state law. In *Engle,* the habeas petitioners argued that at the time of their trials, any objection to Ohio's then-existing self-defense pattern jury instruction would have been futile. The Supreme Court wrote:

> We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

*Id.* at 130, 102 S.Ct. at 1573.

Had King not brought a Post–Conviction proceeding in the first place, he may not have been dismissed for non-exhaustion if the Illinois Post–Conviction remedy would have been "futile." Having brought a Post–Conviction petition, however, his voluntary dismissal may have created a default that was not excused on the grounds of futility. Such a result would be anomalous and unfair. It is especially disturbing because it appears that under *Falconer,* the jury instructions in this case violated due process.

The parties have not addressed specifically the issue of whether Mr. King's voluntary dismissal with prejudice of his Illinois Post–Conviction proceeding constitutes procedural default. The court has done a good deal of independent research on the point, as reflected in the foregoing discussion. Before ruling on this specific issue, the court feels that additional briefs from the parties would be helpful.

The court will set a briefing schedule on the specific question of whether Mr. King's voluntary dismissal of his Illinois Post–Conviction proceeding constitutes procedural default. So that the record in this case will be kept clear, the court requests that the Respondent style its first brief as "Respondent's Supplemental Memorandum in Support of Respondent's Motion to Dismiss for Procedural Default," that Petitioner style its response brief as "Petitioner's Supplemental Response to Respondent's Motion to Dismiss for Procedural Default" and that Respondent style its reply brief as "Respondent's Supplemental Reply in Support of its motion to Dismiss for Procedural Default."

Upon receiving those briefs, the court will move on to consider all the remaining issues in this petition.

### Conclusion

The court will enter a briefing schedule on the issue of whether Petitioner's voluntary dismissal of his Illinois Post–Conviction petition constituted procedural default.