**UNITED STATES of America ex rel. Kevin KING, Petitioner,**

**v.**

**Howard PETERS, Director of the Illinois Department of Corrections, Respondent.**

**No. 91 C 3712.**

United States District Court, N.D. Illinois, E.D.

Nov. 5, 1992.

Kevin King, pro se.

Susan G. Feibus, Louis B. Garippo, Kane, Obbish, Propes and Garippo, Chicago, Ill., for petitioner.

Steven Joseph Zick, Illinois Atty. General's Office, Margaret Mary O'Connell, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Kevin King, a convicted murderer, has petitioned this court for habeas corpus re-

lief pursuant to 28 U.S.C. § 2254. The respondent moved to dismiss the petition on the grounds of exhaustion and procedural default. The facts and procedural history are set out in this court's earlier opinion, *United States ex rel. King v. Peters*, 796 F.Supp. 1110 (N.D.Ill.1992) (*"King I "*), and will not be restated here except as necessary.

In *King I,* the court held that while Mr. King, by failing to challenge jury instructions on direct appeal, had not defaulted, additional briefs were needed on the issue of whether King's voluntary dismissal of his Illinois Post–Conviction petition resulted in a procedural default. While those additional briefs were under consideration by this court, the Seventh Circuit decided *Verdin v. O'Leary,* 972 F.2d 1467 (7th Cir. 1992). Because *Verdin* reaches a conclusion irreconcilable with our earlier decision, *King I* is hereby vacated. For the reasons stated below, King's Petition for Habeas Corpus is denied.

## DISCUSSION

Mr. King's only claim of constitutional error in his conviction concerns the murder/manslaughter jury instruction given at his trial. He argues, relying on *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), that the instructions deprived him of a possible affirmative defense by failing to instruct the jury that it could not convict him of murder if it found that he had acted under an unreasonable belief that he was justified in using force. *King I,* 796 F.Supp. at 1112.[1] The respondent argued in *King I* that Mr. King defaulted this claim in one of three ways: (1) by failing to raise it on direct appeal to the Illinois Appellate Court, (2) by failing to take a timely direct appeal to the Illinois Supreme Court, and (3) by voluntarily dismissing his Illinois Post–Conviction petition in state court. *Id.* at 1113.

Only the first argument for default need be addressed here. In *King I,* this court held that Mr. King had not procedurally

---

1. As noted in *King I,* although King couches his claim as a *"Reddick/Falconer "* claim, only *Fal-* *coner* presents a constitutional issue which could be the basis of habeas relief.

defaulted by failing to raise his *Falconer* argument on direct appeal. *Id.* Faced with the same issue in *Verdin*, 972 F.2d 1467, the Seventh Circuit reached the opposite conclusion. Because of the factual similarity of *Verdin* to this case, and the clarity of the *Verdin* holding, this court feels compelled to vacate its earlier determination in *King I.*

The procedural history of these cases is strikingly similar. Mr. Verdin was convicted for the murders of two men in 1984; Mr. King was convicted in 1985. The jury in Verdin's case received the murder/manslaughter instruction challenged by Mr. King and subsequently invalidated in *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988) on state law grounds, and in *Falconer v. Lane* on federal constitutional grounds. The convictions of Verdin and King were affirmed by the Illinois Appellate Court, in both cases *before* the Illinois Supreme Court decided *Reddick. Verdin*, 972 F.2d at 1471; *King I*, 796 F.Supp. at 1112.

■ The Seventh Circuit held that Verdin had procedurally defaulted on his *Falconer* claim by failing to raise it in constitutional terms on direct appeal. *Verdin*, 972 F.2d at 1472–73, 1479. Applying this decision to Mr. King's petition does not require the detailed analysis employed in *Verdin* to determine whether the challenge to the jury instruction was based on state or constitutional law. Unlike Mr. Verdin, Mr. King did not object to the murder/manslaughter jury instruction on *any* grounds on direct appeal. *King I*, 796 F.Supp. at 1112.[2] Under *Verdin*, Mr. King's *Falconer* challenge has been procedurally defaulted.

■ This determination does not end the inquiry. The default may be excused if Mr. King can demonstrate cause for the default, and actual prejudice resulting from the alleged constitutional violation. *Wainwright v. Sykes*, 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977);

*United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 452–53 (7th Cir.1984). Mr. King contends that challenging the jury instruction would have been futile at the time of his trial and appeal because "[t]rial courts ... in 1985 were required by Illinois law to follow the Illinois Pattern Jury Instructions, Criminal." (Petitioner's Reply to Motion to Dismiss at 1–2). He argues that he was not aware of the legal basis of the claim, and could not have raised it, until *Reddick* was decided, after his direct appeal.[3] (*Id.*)

■ Mr. King's futility claim is itself futile in light of *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Just as in this case, the petitioners in *Engle* failed to object to a jury instruction at trial and on direct appeal; the jury instruction was invalidated after petitioners' convictions were upheld on appeal. *Id.* at 110–13, 102 S.Ct. at 1563–64. The Supreme Court rejected the petitioners' claim that an objection would have been futile because the trial court was required to give the challenged instruction:

> We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

*Id.* at 130, 102 S.Ct. at 1573.

■ Mr. King's argument that he could not have known the legal basis of his challenge to the instruction prior to *Reddick* fares no better. The *Engle* petitioners anticipated this contention as well, claiming that a criminal defendant cannot waive constitutional objections unknown at the time

---

2. Instead, he argued ineffective assistance of counsel and insufficiency of the evidence, arguments he has abandoned in the habeas corpus proceeding. *Id.*

3. As noted in *King I, Reddick* cannot support habeas relief because it is based on state, rather than federal constitutional law. *King I*, 796 F.Supp. at 1112.

of trial. *Id.* at 131, 102 S.Ct. at 1573. The Court had no need to resolve this question, because the foundation for petitioners' due process claims had indeed been laid before their trials. *Id.* at 131–33, 102 S.Ct. at 1573–74 (in light of cases posing burden of proof challenges "we cannot say that [petitioners] lacked the tools to construct their constitutional claim.") Similarly, this court is unable to say that Mr. King could not have constructed a constitutional challenge to the instruction, given the Seventh Circuit's holding that *Falconer* did not establish a "new rule," for purposes of retroactive application under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Taylor v. Gilmore,* 954 F.2d 441 (7th Cir.) ("An examination of all relevant case law, particularly *Cupp*'s [*Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)] progeny, convinces us that there was precedent specific enough to have compelled each of these premises [underlying *Falconer*] at the time *Falconer* was decided"), *cert. granted in part,* —— U.S. ——, 113 S.Ct. 52, 121 L.Ed.2d 22 (1992).[4] Because Mr. King has not shown cause for his default, we do not reach the prejudice prong of *Wainwright v. Sykes. See Farrell v. Lane,* 939 F.2d 409, 412 (7th Cir.), *cert. denied, Farrell v. McGinnis,* —— U.S. ——, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991).

■ Despite the absence of a showing of cause and prejudice, we may reach the merits of a procedurally defaulted claim where a failure to do so would result in a "miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac,* 456 U.S. at 135, 102 S.Ct. at 1575). This exception is extremely narrow, *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992), concerned with actual, rather than legal, innocence. In order to show "actual innocence," the petitioner "must show by clear and convincing evidence that but for a con-

stitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law." *Id.* at ——, 112 S.Ct. at 2517.

*Sawyer* involved a claim of "innocence of the death penalty," rather than innocence of the underlying offense. Logically, the decision should apply equally to cases challenging conviction, rather than sentence. The Seventh Circuit implicitly accepted this in *Verdin* by remanding the case to the district court to give Mr. Verdin the opportunity to argue the *Sawyer* miscarriage of justice exception to procedural default. *Verdin,* 972 F.2d at 1483; *see also McCoy v. Lockhart,* 969 F.2d 649, 651 (8th Cir. 1992) (applying *Sawyer* to habeas petitioner's challenge to rape conviction).

■ This is not a case where after trial, conviction, and appeal, it becomes apparent that the wrong person was apprehended. It is not disputed that Mr. King repeatedly punched and kicked Arthur Warren, even after he had fallen to the floor, and that Mr. Warren died as a result of these injuries. The medical testimony established that Arthur Warren suffered multiple lacerations and hemorrhages on the head, eleven fractured ribs, bleeding in the stomach area, and lacerations on the spleen. *See King I,* 796 F.Supp. at 1111. The only question is whether the offense was murder or voluntary manslaughter.

At Mr. King's trial, there was conflicting evidence regarding the deceased's possession of a knife. Walker, a friend of King and Warren, testified that after King first struck Warren and knocked him to the ground, Warren "lunged up" at King with a knife. King, however, did not mention a knife in his initial statements to the police, nor was a knife ever found in Warren's apartment or in his clothing. Warren never kicked or punched King. *People v. King,* 152 Ill.App.3d 1163, 113 Ill.Dec. 907, 515 N.E.2d 1066 (1987). Given the equivocal nature of the evidence that the de-

---

4. Nonetheless, it should not be overlooked that the *Falconer* decision, "effectuat[ing] the holding of *Reddick* through the vehicle of the Due Process Clause," *Falconer,* 905 F.2d 1129, 1136, was greeted as a significant development in

1990. Additionally, the Supreme Court has granted *certiorari* in *Gilmore v. Taylor* to consider precisely whether existing precedent dictated the result in *Falconer.* —— U.S. ——, 113 S.Ct. 52, 121 L.Ed.2d 22 (1992).

ceased lunged at King with a knife, it is impossible to state that, had the jury been instructed that it could not convict King of murder if it found that he had acted under an unreasonable belief that he was justified in using force, *no reasonable juror* would have found Mr. King guilty of murder. Under the evidence, a conclusion that Mr. King did not believe force was necessary would be at least as reasonable as a conclusion that he acted under an unreasonable belief that force was needed.

### CONCLUSION

The court holds that Mr. King has not shown cause for his procedural default in failing to present his challenge to the murder/manslaughter jury instruction to the state courts. Neither has he shown that a miscarriage of justice will result from this court's failure to consider his defaulted claim on the merits. Accordingly, *King I* is hereby vacated, and Mr. King's Petition for a Writ of Habeas Corpus is denied.